KIRKPATRICK ET AL. *v.* BOWYER

[No. 19,093.  Filed October 3, 1960.]

88

*Melville E. Watson*, of Greenfield, and *Webb, Webb & Smith*, of Noblesville, for appellants.

*Charles B. Salyer, John D. Staggenburg*, both of Anderson, and *Christian, Waltz & Klotz*, of Noblesville, for appellee.

GONAS, J.—Appellants brought this action as co-administrators to recover damages for the death of their decedent resulting from an automobile accident on May 3, 1953. In their first paragraph of amended complaint they allege that decedent was survived by five (5) adult children to whose support and maintenance decedent contributed in her lifetime, and that they had a reasonable expectation that she would continue to do so. By their second paragraph of amended complaint they sought to recover funeral expenses and expenses of administration.

Appellants' demurrers to certain paragraphs of appellee's answer were overruled and these rulings pre-

sented as error. However, appellants in their reply brief concede that these rulings were harmless, and we therefore, do not consider them further.

The cause was submitted to a jury for trial. At the conclusion of appellants' evidence, the court sustained appellee's motions to direct a verdict in favor of appellee upon the first paragraph of amended complaint and in favor of appellants in the amount of $2,000.00 upon the second paragraph of amended complaint. Verdicts were returned accordingly, upon which judgment was entered. Appellants assign as error the overruling of their motion for a new trial.

Paragraph One of appellants' amended complaint is based upon Burns' Stat. §2-404. That part of the statute applicable to this paragraph provided that damages,

"shall inure to the exclusive benefit of . . . the dependent children, . . ."

Recovery under this paragraph must be based upon pecuniary loss, and damages are limited to the pecuniary loss, if any, suffered by decedent's adult children. *Magenheimer* v. *State ex rel. Dalton* (1950), 120 Ind. App. 128, 90 N. E. 2d 813; *New York Cent. R. R. Co.* v. *Johnson, Admx., etc.* (1955), 234 Ind. 457, 127 N. E. 2d 603; *Northern Indiana Power Company* v. *West, Admx.* (1941), 218 Ind. 321, 32 N. E. 713; *Indianapolis Traction, etc. Co.* v. *Lee, Exrx.* (1918), 67 Ind. App. 105, 118 N. E. 959; *Lindley* v. *Sink* (1940), 218 Ind. 1, 30 N. E. 2d 456; *Wabash R. R. Co.* v. *Cregan, Adm.* (1899), 23 Ind. App. 1, 54 N. E. 767.

It is not necessary to support a recovery that decedent should have been under a legal obligation to support her adult children. *New York Cent. R. R. Co.* v. *Johnson, Admx., etc. supra; Novak, Admx., etc.* v. *Chi. & C. Dist. Tr. Co., et al.* (1956), 235 Ind.

489, 134 N. E. 2d 1; *Cleveland, etc., R. Co.* v. *Lutz, Admr.* (1917), 64 Ind. App. 663, 116 N. E. 429; *Smith* v. *Mich. Cent. R. R. Co.* (1905), 35 Ind. App. 188, 73 N. E. 928; *Chicago and Erie Railroad Company* v. *Branyan, Administrator* (1894), 10 Ind. App. 570, 37 N. E. 190. Neither does the statute require that dependent adult children should have been totally dependent. *New York Cent. R. R. Co.* v. *Johnson, Admx., etc., supra; Northern Indiana Power Company* v. *West, Admx., supra; Cleveland, etc., R. R. Co.* v. *Lutz, Admr., supra.*

We are called upon to determine whether there was a total lack of substantial evidence of probative value to support appellants' contention under the first paragraph of amended complaint that the adult children came within a class to whom benefits shall inure, considering only the evidence favorable to appellants and all reasonable inferences deducible therefrom. *Flanagan, Wiltrout and Hamilton, Indiana Trial and Appellate Practice;* §1661, p. 311; *Johnson* v. *Gaugh's Estate* (1955), 125 Ind. App. 510, 124 N. E. 2d 704; *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 735; *Novak, Admx., etc.* v. *Chi. & C. Dist. Tr. Co., et al., supra.*

At the time of her death decedent was past 62 years of age, employed, and receiving $125.00 to $135.00 per month wages and $60.00 per month in rentals. She was paying $55.00 per month on the mortgage on her home. Her five children, whose ages at the time of her death ran from 30 years to approximately 36 years, were all married and living with their spouses, apart from decedent. The three sons were employed and the husbands of the two daughters were employed. Four of decedent's children had children of their own. All five children

had lived at home with decedent until their marriages, the last of which occurred in 1950.

One son was married in 1935. In 1940, his family lived with decedent for a week or ten days while he was looking for a place to live. Decedent would buy clothes for his children, who were her grandchildren, for school, on their birthdays, and at Christmas, and loaned the son money from time to time. He testified that after his marriage he did not depend on decedent for actual support and maintenance. At the time of decedent's death he was steadily employed.

Another son lived with decedent until his marriage in 1948, except when he was in the service in World War II. In 1949, and 1950, he was county sheriff. At times he borrowed money from decedent for short periods. He and his wife and children frequently went to decedent's home. Decedent would take care of the grandchildren when their parents wanted to leave and would can food for this son and his family. This son testified that he has provided for his wife and children since his marriage and furnished them the necessities of life. At the time of his mother's death he was a school bus driver, receiving $14.25 per day, and also in the general trucking business, and his wife, a registered nurse, was employed as head nurse in a hospital.

The third son made his home with his mother until he was married in 1950, except when he was in the service in World War II, at which time his mother received his allotment. Decedent on occasions loaned him money, and he loaned her money. She owed him over two thousand ($2,000.00) dollars at the time of her death. Since his marriage he and his wife have stayed in decedent's home two or three nights when they were moving from one apartment to another, and he would go there for supper when his wife was absent. They

used decedent's washing machine until they purchased one of their own. Decedent baked cakes and canned fruit and made jellies for this son and his family. He has been steadily employed since 1945.

One daughter lived at home with her mother until her marriage in 1942. She also made her home with decedent when her husband was in the service in World War II for three and a half years, and again for six months in 1947, while her husband was in school, at which time her mother paid the bills, prepared the food and did the washing and ironing. Decedent took care of her after an operation in 1944. Later, she would visit her mother at times, staying for periods of three days to two weeks.

The other daughter also lived at home with decedent until her marriage in 1942, and while her husband was in the army in World War II and for a year thereafter. She paid decedent $10.00 per week for board for herself and child. When she and her husband moved to their own home decedent gave them various items of household goods and furnishings, and for about a year she used decedent's washing machine. Decedent would act as a baby-sitter, and at times bought clothes for this daughter's children. Decedent helped can fruits and vegetables and to prepare chickens for the freezer. When the children were born, decedent would help take care of this daughter and her household until the daughter was up and around. When she had an operation in 1948, her husband ate at decedent's home while she was in the hospital. Her husband was steadily employed at the time of decedent's death.

The evidence reveals a closely-knit family where decedent enjoyed doing things for her children and grandchildren, as do so many grandmothers. That the services and gifts had some pecuniary value admits of no

doubt. From the evidence it might be inferred that such services and gifts would continue. Appellants contend that this is a sufficient showing.

Appellants argue that the word "dependent" was inserted for the first time in the 1933 amendment, and did not intend to change the class of beneficiaries ■ for the reason that the amendment contained a proviso; "That this act shall not in any way limit or lessen the liability or right of recovery under the law as it now exists before the passage of this act." A similar proviso also appears in the amendment of 1937. However, there is no such proviso in the act as it read at the times involved here, and we need not determine its meaning. It might be pointed out, however, that actions for wrongful death did not exist at common law and depend upon statute. *Northern Indiana Power Company* v. *West Admx., supra.*

In *New York Cent. R. R. Co.* v. *Johnson, Admx., etc.* (1955), *supra,* which was an action for the wrongful death of a daughter who left her mother surviving, the Supreme Court said:

> "However, it should be noted proof of dependency must show a need or necessity for support on the part of the person alleged to be a dependent ■ . . . coupled with the contribution to such support by the deceased. Payments for board, lodging or other accommodations, mere gifts, donations or acts of generosity by children to parents standing alone are not sufficient to establish dependency on the part of recipient."

Appellant suggests that this statement is erroneous and dicta, which the Supreme Court followed in *Novak, Admx., etc.* v. *Chi. & C. Dist. Tr. Co., et al.* (1956), *supra,* insofar as it requires proof of need or necessity for support. We believe the Supreme Court has stated

the law correctly. A similar statement is contained in 25 C. J. S., *Death*, §33, p. 1108:

"Dependency is based on a condition and not a promise, and such dependency must be actual, amounting to a necessitous want on the part of the beneficiary and a recognition of that necessity on the part of decedent, an actual dependence coupled with a reasonable expectation of support or with some reasonable claim for support from decedent. The mere fact that deceased occasionally contributed to the support of the beneficiary in an irregular way, is not sufficient to support the action, but it is not necessary that the beneficiary be wholly dependent."

See also 16 Am. Jur., *Death*, §80, p. 67, where it is stated:

"In general, it may be said that there must be some degree of dependency and necessitous want on the part of the beneficiary and the recognition of that necessity on the part of the deceased. An occasional contribution from the person for whose death the action is brought to the beneficiaries of the action does not establish such a condition of dependency."

The evidence in this case does not show a need or necessity for support on the part of decedent's children. It goes no more than to show mere gifts, donations and acts of generosity. Accordingly, the court did not err in directing a verdict for the appellee upon the first paragraph of appellants' amended complaint by reason of the failure of proof.

Appellants also complain of the action of the court in directing a verdict in their favor on the second paragraph of amended complaint in the amount which they prayed for; that the prayer of the complaint should be deemed amended to conform to the amount proved. Evidence had been introduced that the funeral expenses

were $1,088.50, and that the costs and expenses of administering the estate, including a reasonable attorney fee, exceeded $1,200.00. Decedent had died instantly in the accident and there was no hospitalization or hospital services and no medical or surgical services were rendered.

Burns' Statutes 2-404, as it read at the time applicable here, insofar as it pertains to the second paragraph of amended complaint, provided:

> "If such decedent depart this life leaving no such widow or widower, or dependent children or dependent next of kin, surviving her or him, the damages shall inure to the exclusive benefit of the person or persons furnishing hospitalization or hospital services in connection with the last illness or injury of the decedent, not exceeding one thousand dollars; performing medical or surgical services in connection with the last illness or injury of the decedent, not exceeding one thousand dollars; to the undertaker for the funeral and burial expenses, not exceeding one thousand dollars; and to the personal representative, as such, for the costs and expenses of administering the estate and prosecuting or compromising the action, including a reasonable attorney's fee, not exceeding one thousand dollars; and in case of death under such circumstances, and when such decedent leaves no such widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of damages to be recovered shall be the total of the reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees, not exceeding the total amount of four thousand dollars."

Appellants argue that it would seem a fair and reasonable interpretation of this statute that reimbursement up to $4,000.00 for any one or all of the funeral, hospital, medical or administration expenses could be recovered upon proof thereof. We do

not so interpret the statute. In our opinion, the legislature evinced an intention that in no event shall the recovery for funeral and burial expenses exceed $1,000.00 or the amount for the personal representative, as such, for the costs and expenses of administering the estate exceed $1,000.00.

The trial court did not err, and the judgment is affirmed.

Gonas, J., Bierly, C. J., and Kelley, J., concur.

Smith, J., not participating.

NOTE.—Reported in 169 N. E. 2d 409.