**DEACONESS HOSPITAL, INC.; The Heart Group, P.C.; Edward N. Moore, M.D., and Gordon Vogel, M.D., Appellants–Defendants,**

v.

**Gunthild GRUBER, Personal Representative of the Estate of Irma Upshaw, Deceased, Appellee–Plaintiff.**

No. 82A01–0211–CV–439.

Court of Appeals of Indiana.

July 17, 2003.

---

842

William Statham, Statham Allega Jessen & Rudisill, Evansville, IN, John Christopher Wall, Wilkinson Goeller Modesitt Wilkinson & Drummy, Terre Haute, IN, Michele S. Bryant, Bamberger Foreman Oswald & Hahn, Evansville, IN, Attorneys for Appellants.

David O. Givens, Allyn & Givens, Mt. Vernon, IN, Attorney for Appellee.

**OPINION**

SHARPNACK, Judge.

In this interlocutory appeal, Deaconess Hospital, Inc., The Heart Group, P.C., Edward N. Moore, M.D., and Gordon Vogel, M.D. (collectively "Medical Providers") appeal the trial court's denial of their motion for partial summary judgment on a wrongful death claim brought by Gunthild Gruber ("Gunthild"), Personal Representative of the Estate of Irma Upshaw ("Irma"). The Medical Providers raise one issue, which we restate as whether the trial court erred when it determined that genuine issues of material fact exist as to whether Gunthild was Irma's dependent. We reverse and remand.

The relevant facts designated by the parties in the partial summary judgment proceeding follow. Irma was born in 1919 in Czechoslovakia. She later married Karl Lassman, and they had one daughter, Gunthild. Lassman died while serving in the army in Russia in 1945. Also in 1945, Irma and her then four-year-old daughter were required to leave Czechoslovakia. Irma and Gunthild walked to what became East Germany and later escaped into West Germany. In 1959, Irma met and married James Upshaw, a United States serviceman stationed in West Germany. Gunthild met and married Herbert Gruber. The Upshaws soon made their home in Mt. Vernon, Indiana, and the Grubers followed them to Mt. Vernon a few months later.

In Mt. Vernon, Irma and Gunthild were partners in operating Gundi's Restaurant. For thirty-five years, Irma managed the restaurant and worked seven days a week, from 3:30 a.m. until noon and 2:00 p.m. until 8:00 p.m. Gunthild worked eight to nine hours a day, with days off at regular intervals. Irma lived in an apartment above the restaurant, and most of her living expenses were paid through the restaurant accounts. In fact, both Irma and Gunthild paid substantial personal expenses from the restaurant accounts. Irma never bought presents or other items for Gunthild or her grandchildren. Most of Irma's earnings "went to [Gunthild] or went back into the Restaurant." Appellant's Appendix at 351, 364.

Irma and Gunthild split the profits from the restaurant evenly until 1994. From 1995 to 1999, Gunthild received sixty percent of the profits and Irma received forty percent of the profits. The division of profits did not reflect the actual percentage of work performed by Irma and Gunthild at the restaurant. Irma worked more hours and received less of the profits than Gunthild because Irma wanted to "make [Gunthild's] life easier." *Id.* at 363. According to Gunthild, she "was given approximately 80% to 90% of the profits, because [Irma] felt that with [Gunthild's] family, husband, and two children, [she] should have the greater income." *Id.* Irma often said, "it was because [Gunthild] had so little as [she] was growing up and because the time and place that [they] lived in caused her to want to give [Gunthild] all of the things of which [she] was deprived, during [her] childhood and until [they] came to the United States." *Id.* at 364. However, Gunthild also testified that she and her husband are self-sufficient, and Gunthild's adult children are self-sufficient. In 1999, seventy-nine-year-old Irma had a heart attack and died. Gunthild now works approximately fifteen hours per day but receives all of the profits from the restaurant.

Gunthild filed a wrongful death complaint against the Medical Providers alleging a failure to provide timely medical care. The Medical Providers filed a motion for partial summary judgment, arguing that Irma had no dependents and that recoverable damages were limited to the

recovery of reasonable medical, hospital, funeral and burial expenses, and the reasonable costs of administration. The trial court denied the Medical Provider's motion for partial summary judgment as follows:

> The issue before the Court is whether evidence exists from which a jury could find that the Respondent was a "dependent" under the terms of the Indiana Wrongful Death Act. Although both parties were able to cite cases in support of their position, the latest decision on the issue seems to be the case of *Necessary v. Inter–State Towing*, 697 N.E.2d 73 (Ind.App.1998). In that case, the two adult sons who were claiming dependency had annual incomes of approximately $40,000.00 and $23,000.00. In that case, the Court of Appeals found that the issue of their partial dependency was a jury question. In addition, the case of *Lustick v. Hall*, 403 N.E.2d 1128, 1132 (Ind.App.1980) provides that partial dependency satisfies the Wrongful Death Act requirement and that the degree of dependency was a jury question.
>
> In this case, the Court finds that there is evidence to support the conclusion that the economic loss occasioned by the death of the decedent was more than a simple loss to the business in which she participated. Rather, there is evidence that the decedent essentially took most of the income to which she was entitled from her business efforts and gave it to the Respondent for her use. Consequently, the Court finds that there are genuine issues of material fact in this case on the issue of dependency.

Appellant's Appendix at 5–6.

The sole issue is whether the trial court erred when it determined that genuine issues of material fact exist as to whether Gunthild was Irma's dependent. On appeal, the standard of review of a grant or denial of a motion for summary judgment is the same as that used in the trial court: summary judgment is appropriate only where the designated evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 537–538 (Ind.2002). The moving party must designate sufficient evidence to eliminate any genuine factual issues, and once the moving party has done so, the burden shifts to the nonmoving party to come forth with contrary evidence. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 460–461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the nonmoving party, and resolve all doubts against the moving party. *Id.*

Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Rice v. Strunk*, 670 N.E.2d 1280, 1283 (Ind.1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Id.* They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

■ Gunthild brought the action against the Medical Providers as a wrongful death action. Wrongful death actions are purely statutory. *Estate of Sears ex rel. Sears v. Griffin*, 771 N.E.2d 1136, 1138 (Ind.2002). The Wrongful Death Act, Ind.Code § 34–23–1–1 (1998) (formerly Ind.Code § 34–1–1–2, repealed by Pub.L. 1–1998, § 221), provides in relevant part that:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have

maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the *dependent children,* if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased.

(emphasis added). Because wrongful death actions are in derogation of common law, the statute creating this right of action must be strictly construed. *Wolf v. Boren,* 685 N.E.2d 86, 88 (Ind.Ct.App. 1997), *trans. denied.*

■ Our supreme court set a standard for dependency in the context of wrongful death actions in *New York Cent. R.R. Co. v. Johnson,* 234 Ind. 457, 127 N.E.2d 603 (1955). The court stated that "proof of dependency must show a need or necessity of support on the part of the person alleged to be dependent … coupled with the contribution to such support by the deceased." *Id.* at 465, 127 N.E.2d at 607.

Dependency is based on a condition and not a promise, and such dependency must be actual, amounting to a necessitous want on the part of the beneficiary and a recognition of that necessity on the part of decedent, an actual dependence coupled with a reasonable expectation of support or with some reasonable claim to support from decedent. The mere fact that deceased occasionally contributed to the support of the beneficiary in an irregular way, is not sufficient to support the action. …

*Wolf,* 685 N.E.2d at 88 (quoting *Kirkpatrick v. Bowyer,* 131 Ind.App. 86, 169 N.E.2d 409, 412 (1960)).

The Medical Providers argue that Gunthild was not a dependent under the Wrongful Death Act. The Medical Providers argue that no genuine issues of material fact exist as to this issue, and that they were entitled to summary judgment as a matter of law. To determine whether Gunthild was Irma's dependent child, we must determine under the designated evidence whether genuine issues of material fact exist regarding: (1) "a need or necessity of support on the part of" Gunthild; and (2) Irma's contributions to such support. We will address each element separately.

### A. Need or Necessity of Support

■ We first address whether genuine issues of material fact exist regarding "a need or necessity of support on the part of" Gunthild. The Medical Providers argue that no evidence was designated to demonstrate any need or necessity of support. Specifically, the Medical Providers contend that Gunthild is able-bodied, self-sufficient, and fully employed since her mother's death. The Medical Providers point out that in the year prior to Irma's death, Gunthild's income from the partnership was $62,696, and, in the year following her mother's death, Gunthild's income from

the restaurant exceeded $100,000. The Medical Providers further argue that Gunthild's "need" is more of an "expectation" than a necessity.

■ On the other hand, Gunthild argues that partial dependency is sufficient. We agree that total dependency is not required. *Estate of Sears,* 771 N.E.2d at 1139. Further, a "plaintiff may be partially dependent even though he could survive without the contribution made by the deceased." *Lustick v. Hall,* 403 N.E.2d 1128, 1131–1132 (Ind.Ct.App.1980). However, Gunthild has failed to designate evidence to establish a genuine issue of material fact relating to such partial dependency.

■■ The contribution must be "more than just a service or benefit to which the claimed dependent had become accustomed." *Estate of Sears,* 771 N.E.2d at 1139. "Services must go beyond merely helping other family members, even those who have relied on that assistance." *Id.* For example, in *Chamberlain v. Parks,* a twenty-five-year-old helped his retired mother in and out of chairs, drove her to doctor appointments, carried groceries, helped his father with lawn care and snow removal, and performed other household tasks. 692 N.E.2d 1380, 1384 (Ind.Ct.App. 1998), *reh'g denied, trans. denied.* We found that these services were not sufficiently "tangible and material" to establish the parents' dependence. *Id.* Rather, the services "amounted to no more than gifts, donations and acts of generosity expected of a son to whom free housing, most of his board, gasoline money and automobile insurance was provided." *Id.*

Additionally, the Medical Providers rely upon *Estate of Miller v. City of Hammond,* 691 N.E.2d 1310 (Ind.Ct.App.1998), *trans. denied.* We also find *Miller* to be persuasive. There, twenty-three-year-old Michael Miller died in a welding accident.

*Id.* at 1311. Michael was survived by his parents, the Millers. *Id.* At the time of his death, Michael was a full-time college student and living with his parents. *Id.* Michael also provided services to two family businesses. *Id.* The Millers brought a wrongful death action against the City, and the City filed a motion for summary judgment, alleging that the Millers were not dependents. *Id.* The trial court granted the City's motion for summary judgment. *Id.*

On appeal, we held, in part, that there was "absolutely no evidence to show that the Millers [were] in a present condition of 'necessitous want.'" *Id.* at 1313. The Millers were both able-bodied individuals who maintained full-time employment and their income increased in the year following Michael's death. *Id.* "The mere fact that the family businesses may have earned a modest profit as a result of Michael's efforts [did] not establish a need for Michael's support on behalf of his parents." *Id.* Rather, we held that the Millers' alleged "need" was more of an "expectation." *Id.* We affirmed the trial court's grant of summary judgment to the City. *Id.*

Here, Irma worked more hours and received less of the profits than Gunthild because Irma wanted to "make [Gunthild's] life easier." Appellant's Appendix at 363. Gunthild acknowledges that she "was given approximately 80% to 90% of the profits, because [Irma] felt that with [Gunthild's] family, husband, and two children, [she] should have the greater income." *Id.* Additionally, Gunthild testified that she and her husband are self-sufficient, and Gunthild's adult children are self-sufficient. In fact, Gunthild and her husband reported adjusted gross incomes of over $100,000 in 1996, 1997, 1999, and 2000 and an adjusted gross income of over $200,000 in 1998. While we do not doubt

that Gunthild and Irma had an exceptionally close relationship and Gunthild's life has been significantly affected by Irma's death, Gunthild designated no evidence that an actual need or necessity for the support existed. Rather, as in *Chamberlain*, the designated evidence demonstrated that Irma's alleged support amounted to gifts, donations, and acts of generosity. *See, e.g., Chamberlain*, 692 N.E.2d at 1384. Additionally, like the parents in *Miller*, Gunthild is able-bodied and self-sufficient. Consequently, Gunthild's alleged "need" was more of an "expectation." *See, e.g., Miller*, 691 N.E.2d at 1313. Gunthild failed to designate a genuine issue of material fact as to her "need," and the Medical Providers were entitled to summary judgment as a matter of law on this issue.

### B. Contributions to Support

■ Although Gunthild failed to establish an actual need or necessity of support and, thus, failed to establish dependency, we will address the second prong of the dependency test—whether genuine issues of material fact exist regarding Irma's contributions to the support of Gunthild. The Medical Providers argue that Irma's contributions were rendered to the partnership and Gunthild received no direct contributions, either in the form of personal services or financial contributions, from Irma.

■ Gunthild argues that contributions required to establish dependency may be non-economic, such as love, care, affection, and services. However, Gunthild confuses the establishment of dependency with the damages that may be obtained if dependency is established. We agree that services may be sufficient contributions to establish dependency. *See Lustick*, 403 N.E.2d at 1132 (holding that a jury question existed as to whether services provided to two minor children by a noncustodial mother were sufficient to establish dependency). However, we do not agree that love, care, or affection are sufficient contributions to establish dependency. In fact, our supreme court recently noted that "[w]e find no cases establishing dependency for purposes of the [wrongful death statute] based on purely emotional support...." *Estate of Sears*, 771 N.E.2d at 1140.

Gunthild relies, in part, upon *Ed Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 910 (Ind.Ct.App.1994), *opinion adopted by* 678 N.E.2d 110 (Ind.1997). However, in that case, the trucking company conceded the plaintiff's dependency and next of kin status. *Id.* Thus, the case addressed only whether the wrongful death statute allowed a dependent next of kin to recover damages for loss of acts of love, care, and affection. *Id.* That case did not address whether acts of love, care, and affection were sufficient to establish dependency. Similarly, Gunthild relies upon *Gash v. Kohm*, 476 N.E.2d 910 (Ind.Ct.App.1985). However, there, the issue was whether damages awarded to parents for the death of their adult daughter were excessive. *Id.* at 915. The case did not address whether the parents were dependents of their adult daughter. Gunthild also relies upon *Necessary v. Inter–State Towing*, 697 N.E.2d 73 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* There, in dicta, the court stated that "[d]ependency can also be established through love, affection, and services, rather than just financial contribution." *Id.* at 76. However, the court went on to hold genuine issues of material fact existed as to whether the decedent made a financial contribution to her son and grandson. *Id.* at 78. Thus, the issue of whether dependency can be established through love, care, and affection was not addressed. Moreover, to the extent that *Necessary* holds that love, affection, or care may establish dependency, we dis-

agree. Consequently, we find no support for Gunthild's assertion that dependency can be established by love, affection, or care.

Gunthild also argues that Irma contributed to Gunthild by running the restaurant while taking little compensation, and in effect, providing Gunthild with virtually all of Irma's earnings. We addressed a similar issue in *Miller*, 691 N.E.2d at 1310. As noted above, the Millers' twenty-three year old son was killed in a welding accident, and the Millers brought a wrongful death action against the City. *Id.* at 1311. The Millers alleged that they were dependent on Michael because he provided services to two family businesses. *Id.* The son and his father each owned one-half of the welding business. *Id.* at 1313. The supply business was owned as a partnership or joint venture by the son, his father, and his stepbrother. *Id.*

The trial court granted summary judgment to the City, and the Millers appealed. *Id.* at 1311. On appeal, we held, in part, that the Millers were making a claim for "indirect contributions" due to the services provided by their son to the two family businesses. *Id.* at 1313. We held that:

> the mere provision of service for pay to a business entity, especially where the decedent is an owner of the business entity, will not constitute support of a dependent although the party claiming dependency owns a portion of the business. The necessarily strict reading of our statute requires the conclusion that recovery of damages for such indirect services are not recoverable as a matter of law.

*Id.*

Similarly, here, Gunthild received an indirect contribution from Irma. Irma never directly gave contributions to Gunthild. Rather, Irma's contributions were made to the partnership. She also either used her partnership profits to benefit the restaurant or failed to withdraw her profits from the partnership, which allowed Gunthild to withdraw the profits to pay for her personal expenses. As in *Miller*, "[t]he necessarily strict reading of our statute requires the conclusion that recovery of damages for such indirect services are not recoverable as a matter of law." *Id.*

In summary, we conclude that Gunthild failed to establish "a need or necessity of support on the part of" Gunthild or that Irma contributed to such support. No genuine issues of material fact exist regarding Gunthild's dependency upon Irma, and the Medical Providers are entitled to summary judgment as a matter of law on this issue.[1] Consequently, the trial court

---

1. In determining that genuine issues of material fact existed, the trial court relied upon *Necessary*, 697 N.E.2d at 73. There, after Juanita Necessary died in an accident, her adult son and adult grandson brought a wrongful death action. *Id.* at 75. The son and grandson alleged that Juanita had resided with them for several years. *Id.* Juanita paid the utilities, a portion of the mortgage, and provided household services. *Id.* The trial court granted the towing company's motion for partial summary judgment, finding that the son and grandson were not dependents. On appeal, this court held that "Juanita made significant financial contributions, and at the time of her death, paid for the household utilities and food." *Id.* at 77. Further, "Juanita made significant, regular and continuous financial and non-financial contributions on a daily basis." *Id.* The panel concluded that the material questions of fact are presented regarding the son's and grandson's dependency claims. We find this case distinguishable for several reasons. First, Juanita's contributions were made directly to her son and grandson, not indirectly through a family business. Here, Irma's contributions were indirect. Second, in *Necessary*, a jury could have concluded that a mutual dependency existed based upon need. Here, the evidence designated by the parties demonstrates that

erred by denying the Medical Providers' motion for partial summary judgment.

For the foregoing reasons, we reverse the trial court's denial of the Medical Providers' motion for partial summary judgment and remand for proceedings consistent with this opinion.

Reversed and remanded.

BARNES, J. and RILEY, J. concur.

Irma's contributions were gifts, not based upon a need for support by Gunthild.