Rita D. TERRY and Dion Terry, as Co–Personal Representatives of the Estate of Donald Ray Terry, Appellants–Plaintiffs,

v.

Norris STEPHENS, R.N.,
Appellee–Defendant.

No. 54A01–0908–CV–419.

Court of Appeals of Indiana.

Feb. 17, 2010.

C. Dennis Wegner, C. Dennis Wegner & Assocs., P.C., Indianapolis, IN, Attorney for Appellants.

Ronald W. Frazier, Frazier & Assocs., Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

The appellants argue that the children of a parent who provides love, care, and affection, but no financial or non-financial support, should be considered dependent children pursuant to the Wrongful Death Act. Here, a father was mentally ill to the extent that he could not support himself or anyone else. He had essentially no contact with his children in the last six years of his life. After he died, his estate filed a wrongful death claim that the trial court dismissed on summary judgment. Although we do not intend to minimize the intangible value of a parent's love and affection, the Wrongful Death Act is based on pecuniary value—and pecuniary loss. Here, the father never did, and never would, be able to support his children; thus, there was no pecuniary loss. Summary judgment was properly entered in the defendant's favor.

Appellants-plaintiffs Rita D. Terry and Dion Terry, as Co–Personal Representatives of the Estate of Donald Ray Terry (collectively, the Estate), appeal the trial court's order granting summary judgment in favor of appellee-defendant Norris Stephens, R.N., on the Estate's wrongful death claim. Specifically, the Estate argues that there is a genuine issue of material fact regarding whether the decedent, Donald Ray Terry (Donald), had children that were "dependents" within the meaning of the Wrongful Death Act.[1] Finding no error, we affirm.

### FACTS

In 1990, the Social Security Administration determined that Donald was disabled because of a severe personality disorder with a limited response to treatment and, therefore, entitled to receive disability

---

1. Ind.Code § 34–23–1–1 et seq.

benefits. At that time, Donald was homeless and living in a tent in the backyard of a relative in Crawfordsville.

In 1991, Donald's divorce was finalized. Among other things, the divorce decree provided that Donald was to have no visitation with his three minor children and no contact with his ex-wife or children for at least six years, while he completed his term of probation. Additionally, the decree relieved him from any obligation to pay child support while incarcerated, but ordered him to pay child support arrearage in the amount of $1200. He has failed to do so. Donald has never paid any child support for his three minor children.

On April 12, 1998, while Donald was incarcerated in the Morgan County Jail, he hanged himself and died of asphyxiation. Donald left at least three minor children surviving him. Following Donald's death, on August 3, 2007, the Estate filed a complaint against Stephens, alleging that she had committed medical malpractice that proximately resulted in Donald's death by suicide. On November 24, 2008, Stephens moved for summary judgment. In the Estate's response to the summary judgment motion, it attached the affidavit of Donald's ex-wife, who attested, among other things, that "[a]lthough Donald had behavioral problems due to what I believe was a mental illness, he did express love, care and affection" for his three children. Appellants' App. p. 79. Following a hearing, the trial court summarily denied Stephens's motion. On May 15, 2009, Stephens filed a motion to reconsider, and on July 29, 2009, the trial court entered an order summarily granting summary judgment in favor of Stephens and vacating its previous order. The Estate now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

In considering the Estate's argument that the trial court erroneously granted summary judgment in Stephens's favor, we note that summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb,* 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning,* 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

### II. Definition of "Dependent Children"

The first issue we must consider herein is whether Donald's three minor children were "dependent children" within the meaning of the Wrongful Death Act such that they may be entitled to damages stemming from his death. Indiana Code section 34–23–1–1 provides, in pertinent part, as follows:

> When the death of one is caused by the wrongful act or omission of another, the

personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she . . . lived, against the latter for an injury for the same act or omission. . . . That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense[s] shall inure to the exclusive benefit of the decedent's estate for the payment thereof. *The remainder of the damages, if any, shall . . . inure to the exclusive benefit of* the widow or widower . . . , and to *the dependent children, if any* . . . , to be distributed in the same manner as the personal property of the deceased.

(Emphases added.) The statute does not define the term "dependent children." Case law, however, provides that there is a two-part test to prove dependency: (1) a need or necessity of support on the part of the alleged dependent; and (2) actual contribution to such support by the deceased. *E.g., Deaconess Hosp., Inc. v. Gruber*, 791 N.E.2d 841, 845 (Ind.Ct.App.2003) (citing *N.Y. Cent. R.R. Co. v. Johnson*, 234 Ind. 457, 465, 127 N.E.2d 603, 607 (1955)).

It is undisputed that Donald had paid no child support for his three minor children at the time of his death. It is also undisputed that he had never offered any nonpecuniary "services" to his children. Indeed, Donald had had no contact or relationship with his children for nearly seven years at the time of his death. The Estate's lone piece of evidence upon which it bases its argument is Donald's ex-wife's affidavit, in which she attests that he offered love, care, and affection to his children, notwithstanding his mental illness and failure to support them financially.

*1. Love, Care, and Affection*

In considering Donald's emotional contributions to his children, we first turn to this court's opinion in *Deaconess*.

In that case, an adult child brought a wrongful death complaint, seeking damages following her mother's death. In finding that the deceased had not actually contributed to her daughter in a manner sufficient to establish dependency, the *Deaconess* court explained as follows:

[The daughter] argues that contributions required to establish dependency may be non-economic, such as love, care, affection, and services. However, [the daughter] confuses the establishment of dependency with the damages that may be obtained if dependency is established. We agree that services may be sufficient contributions to establish dependency. *See Lustick[ v. Hall*, 403 N.E.2d 1128, 1132 (Ind.Ct.App.1980) ] (holding that a jury question existed as to whether services provided to two minor children by a noncustodial mother were sufficient to establish dependency). However, we do not agree that love, care, or affection are sufficient contributions to establish dependency. In fact, our supreme court recently noted that "[w]e find no cases establishing dependency for purposes of the [wrongful death statute] based on purely emotional support. . . ." *Estate of Sears[ex rel. Sears v. Griffin*, 771 N.E.2d 1136, 1140 (Ind.2002) ].

791 N.E.2d at 847. In other words, once dependent status is established, the statute would permit recovery for both loss of services and loss of love, care, and affection. But provision of love, care, and affection, alone, is *not* sufficient to establish dependent status to begin with.

Our Supreme Court has explained that " '[p]ecuniary loss is the foundation of the wrongful death action. This loss can be determined in part from the assistance that the decedent would have provided through money, services or other material benefits.' " *Estate of Sears*, 771 N.E.2d 1136, 1139 (Ind.2002) (quoting *Luider v.*

*Skaggs,* 693 N.E.2d 593, 596–97 (Ind.Ct. App.1998)). In *Sears,* a minor sibling sought to recover under the Wrongful Death Act following the death of her older, but also minor, sibling. The complaint alleged that the younger sister was dependent on the deceased for love, affection, and guidance. In finding that, alone, to be insufficient, our Supreme Court commented that "[s]ervices must go beyond merely helping other family members, even those who have relied on that assistance." *Id.* at 1139; *see also Lustick v. Hall,* 403 N.E.2d 1128, 1132 (Ind.Ct.App. 1980) (finding that minor children were dependents of their decedent mother where, although father had custody of the children and mother did not provide financial support, mother lived with them and provided care, attention, and all domestic services for the children). In remanding for an opportunity to more fully develop the record, our Supreme Court stated that

> [w]e find no cases establishing dependency for purposes of the [wrongful death act] based on purely emotional support.... *Unless more than this is proven on remand, [the decedent] died without legal dependents* and recovery for his wrongful death lies under the [child wrongful death act], not the [wrongful death act].

*Sears,* 771 N.E.2d at 1140 (emphasis added). *Deaconess* and *Sears,* therefore, stand for the proposition that, while relevant for calculation of damages, emotional support, standing alone, is insufficient to establish dependency for the purpose of the wrongful death act.

The Estate argues that analysis should differ depending on whether the alleged dependents are minor children or adults. It offers no caselaw in support of this argument aside from *Necessary v. Inter–State Towing,* 697 N.E.2d 73 (Ind.Ct.App. 1998), which we address below. Regardless, we see no reason that the definition of dependency should turn on the age of the alleged dependent.

In contending that love, care, and affection are sufficient to establish dependency, the Estate directs our attention to *Necessary.* In that case, however, this court explicitly stated that "[t]he question of whether non-monetary services standing alone are sufficient to establish dependency of adult children is not presented, and we do not reach it." *Id.* at 77. The *Deaconess* court also confronted *Necessary,* explaining as follows:

> [The daughter] also relies upon *Necessary v. Inter–State Towing,* 697 N.E.2d 73 (Ind.Ct.App.1998), *reh'g denied, trans. denied.* There, in dicta, the court stated that "[d]ependency can also be established through love, affection, and services, rather than just financial contribution." *Id.* at 76. However, the court went on to hold genuine issues of material fact existed as to whether the decedent made a financial contribution to her son and grandson. *Id.* at 78. Thus, the issue of whether dependency can be established through love, care, and affection was not addressed. Moreover, to the extent that *Necessary* holds that love, affection, or care may establish dependency, we disagree. Consequently, we find no support for [the daughter's] assertion that dependency can be established by love, affection, or care.

*Deaconess,* 791 N.E.2d at 847–48. We agree with the *Deaconess* court's analysis and decline to apply the *Necessary* dicta herein.

### 2. Court Ordered Child Support

■ The Estate also argues that the fact that Donald owed child support merits a finding of dependency. In support of this position, the Estate directs our atten-

tion to *Estate of Ash v. Ash*, 661 N.E.2d 24 (Ind.Ct.App.1996). In *Ash*, the decedent had one minor child for whom he was ordered to pay child support. Over the years, the child's mother made repeated attempts to collect child support, but the decedent never made any payments. He was eventually killed in an accident, and following settlement of a wrongful death claim, the trial court determined that the child was a dependent and should share in the proceeds. On appeal, the decedent's estate argued, essentially, that his nonpayment of child support severed the child's status as a dependent. In affirming the trial court, this court concluded that

> [w]hether [the decedent] actually paid child support is not determinative of [the child's] status as a dependent child under the wrongful death statute. Although it is apparent that [the decedent] successfully avoided his obligations to [his daughter] during his life despite [the child's mother's] efforts in three states, such recalcitrance did not sever [the child's] status as a dependent child.

*Id.* at 26. Thus, the sole issue in *Ash* was whether nonpayment of child support severs a child's dependent status.

We find *Ash* to be distinguishable from the instant case because here, unlike in *Ash*, the decedent never had the ability to pay. An obligation to pay does not always translate to an ability to pay, and according to the Estate's own evidence, Donald's mental illness was always and would always be a complete roadblock to his ability to make child support payments of any kind. Thus, unlike in *Ash*, there was no loss. Donald's children were never going to receive child support payments from him—not because of his incarceration, not because of a recalcitrance to pay, but because he was mentally ill and unable to support himself or anyone else. *See Chamberlain v. Parks*, 692 N.E.2d 1380,

1383 (Ind.Ct.App.1998) (noting that "[t]he purpose of the Wrongful Death Act is to compensate surviving next of kin for pecuniary losses").

■ It is well established that " 'dependency must be actual, amounting to a necessitous want on the part of the beneficiary and a recognition of that necessity on the part of the decedent, an actual dependence coupled with a reasonable expectation of support or with some reasonable claim to support from the decedent.' " *Estate of Miller v. City of Hammond*, 691 N.E.2d 1310, 1312 (Ind.Ct.App.1998) (quoting *Kirkpatrick v. Bowyer*, 131 Ind.App. 86, 169 N.E.2d 409, 412 (1960)). Here, the minor children were not actually dependent on Donald—either partially or fully. There was no showing that there was a "necessitous want" on the part of the children. Moreover, given his mental illness, there was simply no reasonable expectation of support, regardless of the reasonableness of their respective claims.

The Estate directs us to *Wilson v. Redinbo*, 519 N.E.2d 568, 569 (Ind.1988), in which our Supreme Court stated that "[t]he degree of dependency and amount of contribution are issues for the jury." The court went on, however, to explain that, "[w]hile the jury in this case might well have concluded that the monetary value of [the decedent's] contribution was not great and the financial loss suffered by the . . . children was low, the evidence of dependency looked at most favorably to the administrator would allow reasonable persons to conclude that some loss had occurred." *Id.* at 569. In contrast, in this case, there is simply *no* evidence of dependency that warrants putting the issue in front of a jury. As noted above, love, care, and affection are insufficient, and Donald never provided any financial or nonfinancial support to his children. Thus, we agree with the trial court that, as

a matter of law, Donald's children were not his dependents within the meaning of the Wrongful Death Act.

In sum, to prevail, the Estate was required to establish that Donald's children had a need for his support and actually received that support. It has failed on both accounts, inasmuch as its own evidence establishes that Donald was never capable of providing financial support or nonpecuniary services to the children. He may have provided emotional support to the children—a difficult task, inasmuch as he was prohibited from having contact with them during at least six of the final six and one-half years of his life—but it is well established that emotional support is insufficient to establish dependency. The touchstone of the Wrongful Death Act is pecuniary loss, and here, there was none.[2] Therefore, the trial court did not err by granting summary judgment in Stephens's favor.

### III. Constitutionality of the Wrongful Death Act

Finally, the Estate argues that this application of the Wrongful Death Act violates Article I, Section 23 of the Indiana Constitution, which provides that "the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which upon the same terms, shall not equally belong to all citizens." Specifically, the Estate argues that "[t]he minor children of mentally disabled persons ... should not be unconstitutionally discriminated against by being prohibited

from pursuing wrongful death claims on the sole ground that no financial support was paid by their disabled parent during their lifetimes." Appellants' Br. p. 13.

 Initially, we note that the Estate has provided no authority whatsoever in support of this argument. It has, therefore, waived the issue. *See, e.g., Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. Ct.App.2002) (holding argument waived for failure to cite authority or provide cogent argument).

 Waiver notwithstanding, we note that the party challenging the constitutionality of a statute based on a purported improper classification must negate every reasonable basis for the classification. *Chamberlain*, 692 N.E.2d at 1382. Our Supreme Court has identified a two-part test to apply to a constitutional challenge to a statute under Article 1, Section 23:

(1) The disparate treatment accorded by the statute must be reasonably related to inherent characteristics which rationally distinguish the unequally treated classes; and

(2) The preferential treatment must be uniformly applicable and equally available to all persons similarly situated.

*Collins v. Day*, 644 N.E.2d 72, 80 (Ind. 1994). The issue of classification is only subject to judicial review where the lines drawn are arbitrary or manifestly unreasonable. *Id.* at 79. Thus, if any reasonably supposed state of facts could stand as

---

**2.** The General Assembly addressed this issue in 2000, when it enacted Indiana Code section 34–23–1–2, which governs wrongful death claims where the decedent was an "adult person," meaning an unmarried individual with no dependents. The statute provides, among other things, that "[a] parent or child who wishes to recover damages under this section has the burden of proving that the parent or child had a genuine, substantial,

and ongoing relationship with the adult person before the parent or child may recover damages." I.C. § 34–23–1–2(f). Had this statute been in place at the time of Donald's death, his children would have been entitled to recover damages if they had been able to make the required showing. Inasmuch as Donald died in 1998, however, they have no recourse pursuant to this statute, which has an effective date of January 1, 2000.

a basis for the classification, such state of facts is assumed to have existed when the statute was enacted. *Id.* at 80.

■ This court has previously considered the constitutionality of the Wrongful Death Act in relation to the distinction drawn between financially dependent parents and financially independent parents who lose their children. In finding the statute constitutional, this court explained the purpose of the statute:

> ... Thus, the classification scheme is based upon a party's dependency on the deceased. Therefore, in order to survive constitutional scrutiny, the disparate treatment must be rationally related to a parent's dependency.
>
> The purpose of the Wrongful Death Act is to compensate surviving next of kin for pecuniary losses. However, the statute was not created to compensate for loss of life. Such a distinction relates to the purpose of the Wrongful Death Act, because it is only the financially dependent who suffer a pecuniary loss upon the decedent's death. Although we have permitted dependent next of kin to recover for loss of love, care and affection, we observed that absent the dependency requirement, the Wrongful Death Act would be subject to abuse. Permitting nondependents to recover under the Wrongful Death Act would allow a host of unknown potential claimants to seek recovery. There is nothing in the Wrongful Death Act permitting recovery for emotional damages

by nondependents. Rather, it is the intent and purpose of the legislature to permit recovery only to those who were financially dependent on the decedent. Thus, limiting damages to those who are dependent on the deceased is rational, and the Wrongful Death Act satisfies the first prong of *Collins.*

*Chamberlain,* 692 N.E.2d at 1383 (internal citations and footnote omitted).

■ Although we confront a slightly different issue herein, we find the *Chamberlain* analysis to be equally applicable. The Estate essentially argues that the statute draws an impermissible line between children whose parents are able to provide support and those whose parents are unable to provide support. As already explained, however, the legislature intended to permit recovery only to those who were financially dependent on the decedent. Children cannot be financially dependent on an adult, like Donald, who is wholly incapable of supporting himself or anyone else.[3] Thus, there was no pecuniary loss. We find that limiting the statute in this way is rational.

The Wrongful Death Act also satisfies the second prong of the *Collins* test, which requires any privileged classification to be open to any and all persons who share the inherent characteristics which distinguish and justify the classification. The Wrongful Death Act permits all "dependent children" to avail themselves of the privilege

---

**3.** As an aside, we note again that nonpecuniary services can, in fact, provide the foundation for a dependency finding. Thus, a parent who may be unable to work may still be able to support his or her children in other ways—childcare, laundry, help with homework, etc. Those types of services could be considered to be a contribution by the parent to his children such that the children are partially dependent within the meaning of the statute. Thus, it is not necessarily true that children of a mental-

ly ill parent who is unable to support himself will always necessarily be excluded from recovering wrongful death damages. Had there been *any* evidence herein that Donald provided any services to his children, the Estate could have maintained its action. In the absence of such evidence, however, it was neither erroneous nor unconstitutional for the trial court to grant summary judgment in Stephens's favor.

of recovering damages. Therefore, both prongs of the *Collins* test are satisfied, and we conclude that the Wrongful Death Act does not violate Article I, Section 23 of the Indiana Constitution.

The judgment of the trial court is affirmed.

KIRSCH, J., and DARDEN, J., concur.