

**FILED**

Oct 26 2015, 8:44 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Brent Westerfeld
Indianapolis, Indiana

William M. Horne
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

W. Brent Threlkeld
Indianapolis, Indiana

Kelly A. Roth
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robbie Lomax,<br>*Appellant-Defendant,*<br><br>v.<br><br>Jennie L. Michael,<br>*Appellee-Plaintiff* | October 26, 2015<br><br>Court of Appeals Case No.<br>12A05-1503-CT-124<br><br>Appeal from the Clinton Superior Court<br><br>The Honorable Justin H. Hunter, Judge<br><br>Trial Court Cause No.<br>12D01-1203-CT-210 |

**Altice, Judge.**

## Case Summary

[1] Edward Lomax died as a result of injuries sustained after the bicycle he was riding was struck from behind by a vehicle driven by Jennie Michael. Robbie Lomax, individually and as Personal Representative of the Estate of Edward

Lomax (the Estate), filed a wrongful death action against Jennie. The trial court granted partial summary judgment in favor of Jennie based on its conclusion that Robbie does not qualify as a dependent next of kin to Edward as required by Ind. Code § 34-23-1-1, otherwise known as the General Wrongful Death Statute (GWDS). Finding no just cause for delay, the court issued a final judgment against Robbie, individually. Robbie appeals, asserting that the facts demonstrate he does qualify as a dependent next of kin, or, in the alternative, that there is at least a question of fact as to whether he is a dependent next of kin thus making summary judgment inappropriate.

We reverse and remand.

## Facts & Procedural History

On December 24, 2010, Edward was riding his bicycle in the town of Frankfort when he was struck from behind by a vehicle operated by Jennie. Edward died two days later as a result of the injuries he sustained in the accident.

Edward was Robbie's uncle and Robbie's last living relative on his Father's side of the family. Edward was not married and did not have any children. Edward had lived in the same home with Robbie on and off since Robbie was a child. Since approximately 2005 or 2006, Edward began living with Robbie and his wife on a full-time basis. Robbie described his relationship with Edward as that of a father and son.

While Edward lived with Robbie, Edward contributed financially to the household. Edward received $700 each month in government assistance, of which he regularly paid $400 to Robbie. According to Robbie, this money went toward rent and utility bills. The rent for the home they lived in at the time was $600 a month. During this timeframe, Robbie operated a local bar, which eventually closed because it was not financially viable. Robbie then went to work as an auto body repairman, but after two years, left the employment because he was not being paid for his hours worked.

In addition to the regular $400 contributions to the household, Edward would make separate financial contributions to help cover grocery and other miscellaneous expenses, especially during times when Robbie's financial situation was bleak. Edward also contributed to the household by helping to take care of Robbie's dogs and with household chores such as vacuuming and dishes. Edward and Robbie would go on bike rides together and hang out in the evenings.

On December 2, 2011, Robbie was appointed to be the Personal Representative of the Estate for the sole purpose of pursuing a wrongful death action. Thereafter, Robbie filed a wrongful death action in both an individual capacity and on behalf of the Estate on March 8, 2012. In the complaint, Robbie sought damages "for hospital and medical expenses, funeral and burial expenses, lost earnings, costs and expenses incurred in the administration of the estate and prosecuting this complaint, including attorney fees, for pain and suffering, as well as the loss and enjoyment of life, and for the loss of financial support, love,

and companionship he provided to his next of kin . . . ." *Appellant's Appendix* at 11. Robbie alleged therein that he was Edward's dependent next of kin.

[8] Jennie filed an Answer to the Complaint and subsequently filed a motion for summary judgment on December 27, 2013, which the trial court denied. Jennie filed a second motion for summary judgment on October 2, 2014, to which Robbie responded. The trial court heard arguments from both parties and, on February 25, 2015, issued its order granting partial summary judgment in favor of Jennie. The court concluded that the evidence did not establish Robbie was a dependent next of kin for purposes of the GWDS, and thus, dismissed Robbie in his individual capacity from the action. Finding there was no just reason for delay, the court entered final judgment against Robbie in his individual capacity. *See* Ind. Appellate Rule 54(B). This appeal ensued. Additional facts will be provided as necessary.

## Discussion & Decision

[9] On appeal, Robbie does not challenge the court's dismissal of him from the action in his individual capacity, but rather challenges only the court's determination that he does not qualify as a dependent next of kin. This determination is relevant because the wrongful death claim as between the Estate and Jennie is still pending and if Robbie is found to be a dependent next of kin, he could recover pecuniary damages related to Edward's death.

[10] When reviewing a trial court's ruling on summary judgment, we apply the same standard as the trial court. *Manley v. Sherer,* 992 N.E.2d 670, 673 (Ind. 2013).

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Our review is limited to facts designated to the trial court. *Meredith v. Pence,* 984 N.E.2d 1213, 1218 (Ind. 2013). All factual inferences are made in favor of the non-moving party, and we resolve all doubts as to the existence of an issue of material fact against the moving party. *Manley,* 992 N.E.2d at 673. The appellant has the burden of demonstrating that the summary judgment ruling was erroneous. *Amaya v. Brater,* 981 N.E.2d 1235, 1239 (Ind. Ct. App. 2013), *trans. denied.*

[11] The GWDS provides, in pertinent part:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter . . . and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased. . . . [W]hen such decedent leaves no such widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of damages to be recovered shall be the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services,

such funeral expenses, and such costs and expenses of administration, including attorney fees.

I.C. § 34-3-1-1.  Here, it is undisputed that Edward left no widow or dependent children.  In order for Robbie to recover under the GWDS, Robbie must establish he is Edward's dependent next of kin.

[12]  We begin by noting that the purpose of the GWDS is to benefit survivors by providing compensation for the loss of the decedent's life.  *Luider v. Skaggs*, 693 N.E.2d 593, 596 (Ind. Ct. App. 1998), *trans. denied*.  Pecuniary loss is the foundation of a wrongful death action.  *Id*.  This loss can be determined in part from the assistance the decedent would have provided through money, services, and other material benefits.  *Southlake Limousine & Coach, Inc. v. Brock*, 578 N.E2d 677, 679 (Ind. Ct. App. 1991), *trans. denied*.

[13]  Our Supreme Court has set a standard for dependency in the context of wrongful death actions.  The Court has stated that "proof of dependency must show a need or necessity of support on the person alleged to be dependent . . . coupled with the contribution to such support by the deceased."  *New York Cent. R.R. Co. v. Johnson*, 127 N.E.2d 603, 607 (Ind. 1955); *see also Deaconess Hosp., Inc. v. Gruber*, 791 N.E.2d 841, 845 (Ind. Ct. App. 2003) (describing the two-part test to prove dependency as (1) a need or necessity of support on the part of the alleged dependent; and (2) actual contribution to such support by the deceased).  This court has further explained:

> Dependency is based on a condition and not a promise, and such dependency must be actual, amounting to a necessitous want on the part of the beneficiary and a recognition of that necessity on the part of decedent, an actual dependence coupled with a reasonable expectation of support or with some reasonable claim to support from decedent. The mere fact that deceased occasionally contributed to the support of the beneficiary in an irregular way, is not sufficient to support the action . . . .

*Wolf v. Boren*, 685 N.E.2d 86, 88 (Ind. Ct. App. 1997) (quoting *Kirkpatrick v. Bowyer*, 169 N.E.2d 409, 412 (Ind. App. 1960)), *trans. denied*. Total dependency is not required. *Deaconess Hosp.*, 791 N.E.2d at 846. In fact, a "plaintiff may be partially dependent even though he could survive without the contribution made by the deceased." *Id.* (citing *Lustick v. Hall*, 403 N.E.2d 1128, 1131-32 (Ind. Ct. App. 1980)).

[14] In *New York Central,* a mother sought to recover pecuniary damages for the loss of her adult daughter who lived with her for twenty-seven out of the twenty-nine years of her life, although she was not living with the mother at the time of her death. 127 N.E.2d at 605. The decedent, on either a weekly or bi-monthly basis, gave her mother different amounts of money, depending upon the decedent's income, to pay for groceries, fuel, clothes, insurance, utilities, medical bills, and to make part of a down payment on a home because the decedent's stepfather was not making enough to support himself and her mother. *Id.* The Supreme Court held that the GWDS does not require that the next of kin be totally dependent, and that the decedent need not have been under a legal obligation to support the next of kin. *Id.* at 606-07. The Court

further held that the mother had sustained a pecuniary loss and that the evidence of damages was of sufficient weight to justify the jury's finding that the decedent was under a legal civil duty to contribute to the support of her mother. *Id.* at 607.

[15] In *Necessary v. Inter-State Towing*, 697 N.E.2d 73 (Ind. Ct. App. 1998), *trans. denied*, decedent's son filed a wrongful death action after his mother was killed in an automobile accident. Decedent resided with her son and grandson for several years preceding her death and they shared household expenses. Decedent made regular financial and non-financial contributions to the household. Even though the evidence also established that decedent's son and grandson could survive without the decedent's contributions, the court held a jury could have reasonably concluded that the familial and financial relationship gave rise to a "partial and mutual dependency" between decedent and her son and grandson. *Id.* at 78. The court therefore concluded that summary judgment was improper.

[16] The same result follows here. We note that Edward regularly contributed a significant portion of his monthly government benefits to help cover household expenses. Edward was also helpful with household chores and on occasion would make additional financial contributions to pay for other types of expenses. And, even though Robbie never asked Edward to contribute, it remains that Edward's contribution was significant in terms of the costs associated with maintaining Robbie's household. Moreover, during the time Edward lived with Robbie and his wife, Robbie and his wife struggled

financially in that they were dealing with a failing business and then a period of non-payment of earned wages. Given the facts as designated to the court, a reasonable trier of fact could conclude that Robbie was dependent on Edward, at least in part, or that Robbie was not, in fact, a dependent next of kin to Edward. A determination in this regard is a matter appropriately reserved for the finder of fact. *See id.*; *cf. Longest ex. rel Longest v. Sledge*, 992 N.E.2d 221, 230 (Ind. Ct. App. 2013) (affirming the grant of summary judgment on ground that parents of adult decedent were not dependent next of kin where decedent contributed $50 to $100 per week to offset expenses of him living with his parents because such contributions were not regular and amounted to "no more than the sort of gifts, acts of generosity, and kindness to be expected of a son still living under his parents' roof"), *trans. denied*. Having concluded that questions of fact exist as to whether Robbie is a dependent next of kin to Edward, we reverse the trial court's grant of partial summary judgment in favor of Jennie and remand this matter to the trial court for further proceedings.

[17]   Judgment reversed and remanded.

Riley, J., and Brown, J., concur.