

FILED

Feb 19 2019, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

J. David Agnew
Lorch Naville Ward LLC
New Albany, Indiana

Kenneth Doane
Doane Law Office, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

William H. Kelley
Thaddeus C. Kelley
Kelley Law Offices LLC
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darlene Perkins,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Kathy Fillio,<br>*Appellee-Defendant.* | February 19, 2019<br><br>Court of Appeals Cause No.<br>18A-PL-2278<br><br>Appeal from the Washington<br>Circuit Court<br><br>The Hon. Larry Medlock, Judge<br><br>Trial Court Cause No.<br>88C01-1703-PL-183 |

**Bradford, Judge.**

# Case Summary[1]

[1]     When Kathy Fillio left her Salem home in 2016 to spend some time in Florida, she left it and her animals under the care of her half-brother Dennis Slate. When a goat became ill, Slate called Darlene Perkins for help. As Perkins bent over to help the ill goat, a ram headbutted her, causing her to fall and break her arm or wrist. Perkins sued Fillio for negligence, both parties moved for summary judgment on the question of liability, and the trial court entered summary judgment in favor of Fillio. The trial court reasoned that Fillio had no way of knowing that Perkins would be on her property or that the ram had any dangerous propensities. Perkins argues that the trial court should have instead entered summary judgment in favor of her or, at the very least, that there is a genuine issue of material fact which precludes the entry of summary judgment in favor of Fillio. Because we conclude that Perkins's designated evidence does indeed generate a genuine issue of material fact as to Fillio's potential liability, we reverse and remand for further proceedings.

# Facts and Procedural History

[2]     Fillio owns a home on land in Salem ("the Property"), on which she has, at various times, kept horses, cows, steers, sheep, goats, chickens, dogs, cats, and

---

[1] We heard oral argument in this case on January 28, 2019, at Ben Davis High School in Indianapolis, hosted by the Area 31 Career Center. We would like to thank the faculty, staff, and students of Ben Davis and Area 31 for their hospitality and counsel for the high quality of their oral and written advocacy.

guinea pigs. Fillio spends roughly half of her time at the Property and the other half at a home in Florida. In August of 2016, Fillio was in Florida and left Slate in charge of caring for her animals. Fillio later indicated that Slate's responsibilities were limited to feeding and watering the animals. While Fillio was gone, a female goat fell ill, and Slate unsuccessfully tried to contact Fillio by telephone. On August 21, 2016, Slate contacted Perkins for help because she had more experience with farm animals, and Perkins agreed to come to the Property. When Perkins arrived, she saw the bleating goat on the ground in a pen with other animals, including a sheep. Slate invited her into the pen, and they loaded the goat onto a cart. Slate pulled the cart while Perkins followed behind, trying to keep the goat's head inside. As it happens, the sheep in the pen was a ram, *i.e.*, an uncastrated male sheep. As Perkins bent over to assist the female goat, the ram headbutted her, knocking her to the ground and breaking her arm or wrist. Perkins's injuries required two surgeries.

[3] On March 13, 2017, Perkins sued Fillio for negligence. On May 5, 2018, Fillio moved for summary judgment. Fillio designated portions of hers and Perkins's depositions. On May 3, 2017, Perkins filed a response in which she also moved for summary judgment on the question of liability, also designating portions of hers and Fillio's depositions as well as affidavits from herself and from Dr. Dwayne Allen, DVM.

[4] According to Dr. Allen's affidavit, rams are generally territorial and tend to defend themselves, their territory, and females perceived to be in their herd by headbutting unfamiliar animals or persons, tendencies of which sheep farmers

are generally aware. Perkins averred that she was aware that there was a sheep in the pen but was not aware that it was a ram because it had no visible horns. Perkins also averred that she had never owned a sheep or ram and was not familiar with their natural propensities and that Slate had never warned her that a ram might be protective and territorial toward an animal which it perceived to be part of its herd. Fillio's testimony makes it clear that she knew that the sheep she owned was, in fact, a ram, despite its lack of horns.

[5] On August 29, 2018, the trial court entered summary judgment in favor of Fillio:

> [H]aving heard arguments on Defendant's Motion for Summary Judgement and being duly advised [the trial court] NOW FINDS AND ORDERS:
>     1.  That Kathy Fillio made arrangements to have her brother feed her "domestic" livestock while she was absent.
>     2.  Domestic animal is defined in I.C. 15-17-2-26.
>     3.  There was a lack of evidence indicating that the Defendant knew the Plaintiff would be on her real estate in particular inside the area where the Plaintiff kept the ram and other sheep.
>     4.  That there was no evidence that the ram had been aggressive toward anyone in the past.
>     5.  That the Defendant has not violated a duty of care to the Plaintiff.
> WHEREFORE, the Motion for Summary Judgment is hereby GRANTED in favor of the Defendant and against the Plaintiff.

Appellant's App. Vol. II p. 7.

# Discussion and Decision

[6] The trial court entered summary judgment in favor of Fillio. The standard of review of a summary judgment order is well-settled. Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Spudich v. N. Ind. Pub. Serv. Co.*, 745 N.E.2d 281, 289 (Ind. Ct. App. 2001). Summary judgment will be granted where the evidence presented demonstrates that no genuine issue of material fact exists, entitling the moving party to judgment as a matter of law. Ind. Trial Rule 56(C). Summary judgment is intended to end litigation about which there can be no factual dispute. *Sizemore v. Arnold*, 647 N.E.2d 697, 698 (Ind. Ct. App. 1995) (citing *Liberty Mut. Ins. Co. v. Metzler,* 586 N.E.2d 897, 899 (Ind. Ct. App. 1992)). Once the movant for summary judgment has established that no genuine issue of material fact exists, the nonmovant may not rest on her pleadings but must set forth specific facts which show the existence of a genuine issue for trial. *Wade v. Norfolk & W. Ry. Co.*, 694 N.E.2d 298, 301 (Ind. Ct. App. 1998).

[7] We are bound by the same standard as the trial court and will consider only those matters which were designated at the summary judgment stage. *Spudich*, 745 N.E.2d at 290. We will not reweigh the evidence but will liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Id.* The party who lost at the trial court has the burden to persuade the appellate

court that the trial court erred. *Id.* A trial court's grant of summary judgment is clothed with a presumption of validity. *Wicker v. McIntosh*, 938 N.E.2d 25, 28 (Ind. Ct. App. 2010). A grant of summary judgment may be affirmed by any theory supported by the designated materials. *Id.* However, a trial court's grant of summary judgment may not be reversed on a ground which was not presented to the trial court. *Nance v. Miami Sand & Gravel*, 825 N.E.2d 826, 834 (Ind. Ct. App. 2005).

[8] Perkins sued Fillio for negligence, a tort that requires proof of "(1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff resulting from the defendant's breach." *Rhodes v. Wright*, 805 N.E.2d 382, 385 (Ind. 2004). "Negligence will not be inferred; rather, all of the elements of a negligence action must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts." *Kincade v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind. Ct. App. 2002). "An inference is not reasonable when it rests on no more than speculation or conjecture." *Id.* "A negligence action is generally not appropriate for disposal by summary judgment." *Id.* "However, a defendant may obtain summary judgment in a negligence action when the undisputed facts negate at least one element of the plaintiff's claim." *Id.*

# I. Premises Liability

[9] Perkins argues that the trial court should have concluded, as a matter of law, that Fillio was negligent for not taking measures adequate to ensure that her

ram did not injure invitees[2] such as Perkins. As a general rule, "a landowner owes the highest duty to an invitee: a duty to exercise reasonable care for his protection while he is on the landowner's premises." *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991).

> The best definition of this duty comes from the Restatement (Second) of Torts § 343 (1965):
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* at 639–40.

---

[2] Fillio concedes that Perkins was invited upon the property by Slate but does not concede that she was an invitee of Fillio. In our view, this distinction does not help Fillio, as it was foreseeable that Slate might have to invite others onto the Property to help care for the animals. In fact, Fillio was aware Slate had done this in 2013, when Slate invited Perkins onto the Property to assist him with a sick steer. Although Fillio denied that she knew Perkins was the person Slate invited onto the Property, she was aware that he had invited someone in the past.

Indiana law also specifically addresses the question of liability for injury caused by domestic animals:[3]

> [t]he owner of a domestic animal is not liable for injuries caused by the animal unless the animal had dangerous propensities known, or which should have been known, to the owner. *Burgin v. Tolle* (1986), Ind. App., 500 N.E.2d 763; *Doe v. Barnett* (1969), 145 Ind. App. 542, 251 N.E.2d 688. A dangerous propensity is "a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation." *Weaver v. Tucker* (1984), Ind. App., 461 N.E.2d 1159, 1161 (citation omitted). If an individual animal lacks dangerous propensities, "the rule is simply that the owner of a domestic animal is bound to know the natural propensities of the particular class of animals to which it belongs." *Burgin, supra*, 500 N.E.2d at 766. In either event, the owner must exercise reasonable care to guard against the propensities and to prevent injuries reasonably anticipated from them. *Borton v. Lavenduskey* (1985), Ind. App., 486 N.E.2d 639, *reh'g. denied*, 488 N.E.2d 1129, *trans. denied*.

*Forrest v. Gilley*, 570 N.E.2d 934, 935 (Ind. Ct. App. 1991), *trans. denied*.

As the Indiana Supreme Court has explained in a dog-bite case,

> whether the owner or keeper of the animal is aware of any vicious propensity, the legal description of the duty owed is the same: that

---

[3] It is undisputed that the ram that caused Perkins's injuries qualifies as a domestic animal under Indiana law:

  (a) "Domestic animal" means an animal that is not wild
  (b) The term is limited to:
     (1) cattle, calves, mules, swine, sheep, goats, dogs, cats, poultry, ostriches, rhea, emus, or other birds [or]
     (2) an animal of the bovine, equine, ovine, caprine, porcine, canine, feline, avian, camelid, cervidae, or bison species[.]

Ind. Code § 15-17-2-26.

of reasonable care under the circumstances.  Reasonable care requires that the care employed and the precautions used be commensurate with the danger involved under the circumstances of a particular case.  The safeguards to be used, the precautions to be observed and the foresight to be exercised differ in each case, and are usually matters to be resolved by the jury.

*Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind. 1993) (citation omitted).

[12] Pursuant to *Forrest* and *Ross*, then, a duty to protect against harm caused by domestic animals can be established by one (or both) of the following:  (1) a defendant's knowledge that a particular animal has a propensity for violence or (2) a defendant's ownership of a member of a class of animals that are known to have dangerous propensities, as the owner of such an animal is bound to have knowledge of that potential danger.  *See Forrest*, 570 N.E.2d at 935.

[13] Fillio's argument is that the owner of a domestic animal that causes injury cannot be held liable in the absence of specific knowledge that the animal in question has exhibited dangerous tendencies.  As we have seen, however, a lack of that specific knowledge does not necessarily relieve a domestic animal owner of liability.  Fillio relies on language indicating that "'[o]wners of domestic animals may […] be held liable for harm caused by their pet but only if the owner knows or has reason to know that the animal has dangerous propensities.'"  *Gruber v. YMCA of Greater Indpls.*, 34 N.E.3d 264, 267 (Ind. Ct. App. 2015) (quoting *Poznanski ex rel. Poznanski v. Horvath*, 788 N.E.2d 1255, 1259 (Ind. 2003) (emphasis supplied by *Gruber* court removed)).  This language, originally from the Indiana Supreme Court's decision in *Poznanski*, does not

exclude binding an animal owner with knowledge that her animal belongs to a class of animals known to have dangerous propensities. The Court's pronouncement specifically includes those owners who know *or have reason to know* that their domestic animal has dangerous propensities, which would include those without specific knowledge about a particular animal. Indeed, in the very case on which Fillio relies, we affirmed the grant of summary judgment in favor of the owner of a pig which had bitten a person only because (1) "the evidence designated at summary judgment show[ed] that […] the pig had never injured anyone or exhibited any dangerous propensities, including on the day in question" and (2) "*the plaintiffs designated no evidence that the particular breed to which the pig belonged has dangerous propensities*." *Gruber*, 34 N.E.3d at 267–68 (emphasis added).

[14]     Here, while Perkins did not designate any evidence that the ram had ever exhibited any dangerous tendencies of which Fillio was aware, she did designate evidence that rams, as a class, do have dangerous tendencies, at least under certain circumstances. Specifically, Perkins designated Dr. Allen's affidavit, in which he averred that rams are generally territorial and tend to defend themselves, their territory, and females perceived to be in their herd by headbutting unfamiliar animals or persons. This evidence generates a genuine issue of material fact as to the dangerous tendencies of rams, which, if true, Fillio is bound to have known. This would in turn generate a genuine issue as to whether Fillio took reasonable precautions under the circumstances to prevent the ram from causing injury to invitees on her land. We conclude that

the trial court erred in entering summary judgment in favor of Fillio on Perkins's premises-liability claim.

## II. Negligent Entrustment and/or Supervision

### A. Entrustment

[15]    Perkins also contends that Fillio, as a matter of law, is liable under a theory of negligent entrustment.

> To prove a claim of negligent entrustment, a plaintiff must prove:
> (1) an entrustment; (2) to an incapacitated person or one who is incapable of using due care; (3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment; (4) proximate cause; and, (5) damages. *Brewster v. Rankins*, 600 N.E.2d 154, 158–59 (Ind. Ct. App. 1992).

*Hardsaw v. Courtney*, 665 N.E.2d 603, 606 (Ind. Ct. App. 1996). The gist of Perkins's argument is that Fillio was negligent, as a matter of law, for entrusting the care of her animals to Slate. At issue is whether (1) Slate was incapable of using due care to protect invitees from the animals and (2) whether Fillio actually knew Slate to be incapable of using due care.

[16]    Perkins designated evidence that Slate was in poor health and knew nothing about caring for farm animals. Even if we assume that this is enough to establish an incapacity to protect invitees from Fillio's animals, Perkins has failed to designate any evidence that Fillio had specific and actual knowledge of this incapacity. We conclude that the trial court correctly entered summary

judgment in favor of Fillio to the extent that Perkins made a claim of negligent entrustment.

## B. Supervision

Perkins contends that Fillio, as a matter of law, is liable pursuant to a theory of negligent supervision of her agent Slate. Perkins points to designated evidence that Fillio had Slate look after her animals despite leaving him no instructions for addressing an emergency, leaving no funds to pay a veterinarian should one become necessary, and making herself difficult to contact. At the outset, it is worth noting that Perkins bases this argument, in part, on Section 7.05 of the Third Restatement of Agency, which provides that "[a] principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent." RESTATEMENT (THIRD) OF AGENCY § 7.05 (AM. LAW. INST. 2006). This provision, however, has never been adopted by Indiana courts, and, in fact, the Indiana Supreme Court recently rejected an invitation to do so, albeit in the slightly different context of a negligent hiring claim. *See Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1179 (Ind. 2017) ("Although the Restatement (Third) of Agency [section 7.05] may find otherwise, Indiana has developed a line of precedent according to [*Tindall v. Enderle*, 162 Ind. App. 524, 320 N.E.2d 764 (1974)] and section 317 of the Restatement (Second) of Torts [regarding negligent hiring claims], and we find no reason to upset reliance on this point.") (footnote omitted).

[18]     Moreover, the case cited by Perkins to support her negligent supervision claim, *Scott v. Retz*, 916 N.E.2d 252 (Ind. Ct. App. 2009), addresses the negligent retention and supervision of an employee, and there is no designated evidence that Slate was an employee of Fillio's. *See id.* at 257 ("Negligent retention and supervision is a distinct tort from respondeat superior; it may impose liability on an employer when an employee 'steps beyond the recognized scope of his [or her] employment to commit a tortious injury upon a third party.'") (citation omitted). We conclude that Perkins has failed to produce sufficient authority to support her argument that Fillio may be held liable for negligent supervision of Slate.[4]

## III. Vicarious Liability

[19]     Finally, Perkins contends that Fillio should be held vicariously liable for the negligence of Slate, her agent, even if she were not herself negligent. Section 214 of the Second Restatement of Agency provides as follows:

> A master or other principal who is under a duty to provide protection for or to have care used to protect others or their property and who confides the performance of such duty to a servant or other person is subject to liability to such others for harm caused to them by the failure of such agent to perform the duty.

RESTATEMENT (SECOND) OF AGENCY § 214 (AM. LAW. INST. 1958).

---

[4] In any event, this claim, at least as stated here, is arguably indistinguishable from Perkins's claim of negligent entrustment.

Fillio argues that Perkins failed to argue this ground in the trial court and may not now raise it for the first time on appeal. We agree that Perkins has waived the issue for appellate review. *See, e.g.*, *Nance*, 825 N.E.2d at 834 ("[A] trial court's grant of summary judgment may not be reversed on a ground which was not presented to the trial court."). Moreover, Perkins does not seem to claim, even on appeal, that Slate was negligent, much less point to any designated evidence that would support such a conclusion. Without the underlying negligence of the agent, there can be no vicarious liability.

## Conclusion

We conclude that the trial court erred in granting summary judgment in favor of Fillio on Perkins's premises liability claim. Perkins designated evidence that rams have dangerous tendencies as a class of animals, knowledge with which Fillio would be charged pursuant to Indiana law, if true. There is, therefore, a genuine issue of material fact as to whether rams are dangerous as a class of animals and, if so, a genuine issue as to whether Fillio took reasonable measures to prevent the ram from causing harm to invitees like Perkins. Perkins, however, did not designate evidence sufficient to generate a genuine issue of material fact as to negligent entrustment or negligent supervision. Finally, Perkins did not preserve her claim of vicarious liability for appellate review, a claim that is not supported by any designated evidence of underlying negligence in any event.

We reverse the judgment of the trial court and remand for further proceedings.

Kirsch, J., and Altice, J., concur.