

**FILED**

Aug 31 2020, 8:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Trevor W. Wells
Danny Merril Newman Jr.
Reminger Co., L.P.A.
Crown Point, Indiana

ATTORNEY FOR APPELLEE

Mark J. Schocke
Highland, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Franciscan ACO, Inc.,
Franciscan Alliance, Inc., and
Charlotte Sweezer,

*Appellants-Defendants,*

v.

Vaughn Newman, *as personal representatative of the* Estate of
Virginia Newman,

*Appellee-Plaintiff,*

August 31, 2020

Court of Appeals Case No.
19A-CT-2465

Appeal from the Lake Superior
Court

The Honorable Thomas W.
Webber, Sr., Judge Pro Tempore

Trial Court Cause No.
45D10-1805-CT-111

**Robb, Judge.**

# Case Summary and Issue

[1] In this interlocutory appeal, Charlotte Sweezer, Franciscan ACO, Inc., and Franciscan Alliance, Inc. (collectively, "Defendants") appeal the trial court's denial of their motion for partial summary judgment on a wrongful death claim brought by Vaughn Newman as Personal Representative of the Estate of Virginia Newman ("Plaintiff"). Defendants raise one issue for our review, which we restate as whether the trial court erred in denying Defendants' motion for partial summary judgment on this claim. Concluding no genuine issue of material fact exists and therefore, the trial court erred in denying Defendants' motion, we reverse and remand.

# Facts and Procedural History

[2] On March 2, 2018, Virginia Newman, while a participant in the Franciscan Senior Health & Wellness Day Care ("PACE") program, was a passenger in a vehicle driven by Sweezer, an employee of Franciscan ACO, Inc. and/or Franciscan Alliance, Inc. Sweezer failed to ensure Virginia and her wheelchair were properly secured for transport and, when Sweezer made a turn, Virginia and her wheelchair fell over. As a result of Defendants' negligence, Virginia was injured and later died from her injuries on March 15. Virginia was survived by two sons, Vaughn and Victor Newman; her husband, Vincent, predeceased her.

[3] Vaughn was born to Vincent and Virginia in 1971 and several years later, Victor was born. The family lived in Illinois and, after high school, Vaughn joined the United States Air Force. At some point, Virginia was diagnosed with multiple sclerosis. In 1993, Vaughn returned from the Air Force and continued to live with his parents in Illinois because he could not afford to live on his own. He began working at Plastics Color Corporation where he was employed until 2013. Virginia and Vincent had planned to purchase a duplex in Crown Point, Indiana; however, Vincent passed away before they could.

[4] In 2001, Virginia purchased the duplex, took out a mortgage, and moved to Indiana. The mortgage, utilities, insurance, and taxes were in her name and paid by her. Vaughn moved with his mother and continued to live with her in the duplex. In 2003, Virginia executed a General Durable Power of Attorney giving Vaughn authority to transact business on her behalf. *See* Appellants' Appendix, Volume III at 12-17.

[5] Vaughn lived with his mother until 2003 when he moved into an apartment with a roommate. Virginia did not provide any assistance with Vaughn's rent, bills, or other expenses. In 2005, Vaughn's roommate planned to move in with his fiancée and Vaughn could not afford to live in the same apartment without a roommate. He could, however, afford a cheaper apartment but not in an area he deemed acceptable or safe. Vaughn asked his mother if he could move back in with her and she happily agreed.

[6]     From 2005 until Virginia's death in March 2018, Vaughn lived in the duplex rent-free with his mother. During this time, Virginia paid her own mortgage, home insurance, property taxes, utilities, and food. There was no expectation for Vaughn to contribute to any of these expenses. Vaughn lived in a room rent-free but paid his own bills such as auto insurance, his car, cell phone, student loans, medical bills, his personal credit card, and for a Direct TV football package for his room. He had his own checking account and did not need any assistance from his mother to pay his bills. Vaughn took care of himself; his mother did not provide any services for him, such as cooking, cleaning, or any other daily living tasks. Notably, after 2001, Virginia never claimed Vaughn as a dependent on her taxes and Vaughn never claimed her; they each filed separately.

[7]     When Vaughn moved back in 2005, Virginia asked him to open a joint checking account with her "so [he] could help out. It would make things easier legally if [he] was on her account should something happen." *Id.* at 79. Virginia's social security disability payments were deposited into the account but not Vaughn's income. As Virginia's health declined, "it was just easier for [Vaughn] to write out the bills for her, write out the checks, [and] mail them off." *Id.* at 80. While Vaughn was living with his mother, they split the cost of the groceries. At some point, because he was doing all the shopping, he began purchasing the groceries with the joint account and would pay his mother back for his groceries by transferring the money from his account into the joint account. And if he purchased the groceries with his own funds, he would

transfer the amount his mother owed him into his account. Even though he used the joint account, his understanding was that it was for the benefit of his mother. *See id.* at 81.

[8] During this time, Virginia purchased Vaughn two cars. In 2008, she purchased him a 2002 Neon as a gift, and after that car died in 2015, she purchased him a Kia Soul. Although Virginia paid for both cars, Vaughn paid the taxes, title and registration fees, auto insurance, yearly registration, and maintenance. *See id.* at 84-85, 99. Vaughn believed that Virginia may have paid for maintenance on occasion. He would not have been able to afford the Neon without his mother's assistance; however, he needed a car for getting "to and from work and taking [his mother] to and from doctors, church, visiting relatives, [and] running errands." *Id.* at 122.

[9] Around 2011 or 2012, Virginia fell, was hospitalized, and essentially became wheelchair bound. Given Virginia's health, Vaughn did not want to move out. Instead, he became her caretaker by assisting her with medication, preparing food, and providing general support. *See id.* at 33. He also continued to work full-time. In 2013, Vaughn began a new job at OTECH; his gross income over the next few years was $28,307 (2013), $40,769 (2014), $41,629 (2015), and $45,148 (2016). Because Vaughn's income increased in 2014, he wanted to help so began paying the water bill, which he paid until 2016. In 2017, his mother resumed making those payments so he could pay more of his student loan debt. At his deposition, Vaughn testified that from 2013 to 2017 he could afford to

live on his own and did not have any financial needs from his mother. *Id.* at 113. Instead, he chose to continue living with his mother to take care of her.

[10] In the summer of 2017, Virginia's health deteriorated, and she required home health assistance. Vaughn "just wanted to help out[,]" *id.* at 97, so from October 2017 to January 2018, he took family medical leave to help care for his mother because it would have been more expensive to hire an aide to care for her fulltime. During this time, Virginia reimbursed him for lost wages. In January 2018, Virginia executed her Qualified Income Trust naming Vaughn as the trustee. In March, Virginia was injured and subsequently died. After her death, Vaughn refinanced the duplex and took out a $95,000 mortgage. Vaughn continues to pay the same bills he had prior to his mother's death plus a monthly mortgage of $595 and utilities.

[11] Following Virginia's death, Plaintiff filed a complaint against Franciscan ACO, Inc. and Franciscan Alliance, Inc. alleging the following: Count I, negligence;[1] Count II, wrongful death pursuant to Indiana Code section 34-23-1-1; and, in the alternative to Count II, Count III, the Indiana Survival Act. Plaintiff subsequently amended the complaint to add Sweezer as a defendant. Defendants filed their answer admitting the factual allegations contained in the complaint and further admitting that Virginia sustained injuries as a direct and proximate result of their negligence. *See id.*, Vol. II at 48. Defendants asserted

---

[1] Plaintiff later clarified that Count I was not intended to be a stand-alone negligence claim; rather, it alleged the factual basis for the wrongful death and/or survival causes of action. *See* Appellants' App., Vol. II at 63.

as an affirmative defense that their admission of liability entitled Plaintiff to judgment as a matter of law on Count II but prevented Plaintiff from recovering on Count III and that Defendants were therefore entitled to judgment on Count III. Defendants also asserted as an affirmative defense that, because Virginia was an unmarried adult without dependents at the time of her death, Plaintiff's wrongful death recovery was subject to the $300,000 cap for loss of love and companionship contained in Indiana's Adult Wrongful Death Statute, Indiana Code § 34-23-1-2. *See id.* at 50.

[12] Subsequently, Defendants filed a motion for partial summary judgment arguing that, with respect to Count II, the designated evidence established that Plaintiff could only recover damages under the Adult Wrongful Death Statute because, at the time of her death, Virginia did not have a surviving spouse, dependent children, or dependent next-of-kin. *See id.* at 93. As to Count III, Defendants argued the evidence established that Defendants' acts or omissions caused Virginia's death, foreclosing any survivorship claim under Indiana Code section 34-9-3-1 which is available only when the decedent dies from causes unrelated to the injuries caused by the defendant. Therefore, Defendants asked the trial court to enter partial summary judgment in favor of Plaintiff on Count II, leaving the issue of damages to be decided, and to dismiss Count III. *See id.* at 77.

[13] In support of their motion, Defendants designated certain evidence, including: (1) Plaintiff's Amended Complaint; (2) Defendants' Answer & Affirmative Defenses; (3) a transcript of Vaughn's deposition; (4) Plaintiff's Answers to

Interrogatories; (5) a copy of the decedent's General Durable Power of Attorney; and (6) the decedent's Qualified Income Trust. The trial court held a hearing and denied Defendants' motion for partial summary judgment and concluded that there are "factual issues to be determined by the trier of facts which prevent [it] from considering Defendants' motion." *Id.*, Vol. IV at 122.[2] The trial court certified its order for interlocutory appeal, which we accepted. Defendants now appeal. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Standard of Review

[14] Summary judgment is a tool which allows a trial court to dispose of cases where only legal issues exist. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). When reviewing the grant of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1176 (Ind. 2017). The moving party bears the

---

[2] Prior to filing this summary judgment motion, Defendants had moved for partial judgment on the pleadings, but the trial court issued an order deferring its ruling until trial. The appealed order is titled Order Denying Defendants' Motion for Partial Judgment on the Pleadings; however, after being notified of the clerical error, the trial court later issued a nunc pro tunc order modifying the order to reflect that it actually intended to deny Defendants' Motion for Partial Summary Judgment. Appellants' App., Vol. IV at 146.

initial burden of showing the absence of any genuine issue of material fact as to a determinative issue. *Hughley*, 15 N.E.3d at 1003.

[15] Once the movant for summary judgment has established that no genuine issue of material fact exists, the nonmovant may not rest on its pleadings but must set forth specific facts which show the existence of a genuine issue for trial. *Perkins v. Fillio*, 119 N.E.3d 1106, 1110 (Ind. Ct. App. 2019). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley*, 15 N.E.3d at 1003. As opposed to the federal standard which permits the moving party to merely show the party carrying the burden of proof lacks evidence on a necessary element, Indiana law requires the moving party to "affirmatively negate an opponent's claim." *Id.* (quotation omitted). Our review is limited to the evidence designated to the trial court, T.R. 56(H), and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). On appeal, the non-moving party carries the burden of persuading us that the trial court erred. *Hughley*, 15 N.E.3d at 1003.

## II. Summary Judgment

### A. Admission of Liability

[16] We begin by evaluating the effect of Defendants' admission of liability. In its complaint, Plaintiff alleged:

5.      On March 2, 2018, Virginia Newman, as a participant in the . . . PACE Program . . . was a passenger in a vehicle being driven by . . . Sweezer, an employee of Franciscan ACO, Inc. and/or Franciscan Alliance, Inc.

6.      [Franciscan ACO, Inc. and/or Franciscan Alliance, Inc.] . . . are liable for the negligent acts of its employee . . . Sweezer on the date in question based upon *respondeat superior*.

7.      That Defendants . . . owed the Plaintiff a duty of care which included providing safe transport when Plaintiff was traveling in the Defendants' vehicle to and from the . . . PACE Senior Day Care program.

8.      That Defendants proceeded to breach the duty of care owed to the Plaintiff by failing to ensure the Plaintiff, and her wheelchair, were properly fastened and/or secured for transport. During said transport, when the driver was making a turn, the Plaintiff and her wheelchair, tipped over inside the vehicle.

9.      As a direct and proximate result of the negligence of the Defendants, the Plaintiff sustained debilitating injuries, including a punctured lung, abrasions, contusions, and other medical damages requiring hospitalization, intensive care, palliative care, and eventually hospice case.

10.     As a direct and proximate result of the negligence of the Defendants, the Plaintiff died from her injuries on March 15, 2018.

Appellants' App., Vol. II at 44.  Defendants filed their answer to the complaint admitting these factual allegations and averments.  *Id.* at 48.

[17] Judicial admissions are voluntary and knowing concessions of fact by a party or a party's attorney occurring at any point in a judicial proceeding. *Stewart v. Alunday*, 53 N.E.3d 562, 568 (Ind. Ct. App. 2016). This includes admissions made in stipulations, *pleadings*, admissions made in open court, and admissions made pursuant to requests to admit. *Id.* Judicial admissions are conclusive and binding on the trier of fact and "[s]imply put, a judicial admission is a substitute for evidence, in that it does away with the need for evidence." *Id.* at 569 (quotation omitted). Defendants' admission of liability in their answer constitutes a judicial admission that is conclusive and binding on the trier of fact. Therefore, the only remaining issue is the extent of Plaintiff's recovery, which turns on an analysis of our wrongful death statute.

## B. Wrongful Death Claim

[18] Title 34, Article 23 of the Indiana Code is titled "Causes of Action: Wrongful Death." Chapter 1 of Article 23 contains two sections: Section 1, the General Wrongful Death Statute ("GWDS") and Section 2, the Adult Wrongful Death Statute ("AWDS"). The GWDS provides, in relevant part:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter . . . and the damages shall be in such an amount as may be determined by the court of jury, *including, but not limited to*, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof.

The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any . . . to be distributed in the same manner as the personal property of the deceased.

Ind. Code § 34-23-1-1 (emphasis added). The statute also allows damages for loss of love, care, and affection. *Estate of Sears ex. rel. Sears v. Griffin*, 771 N.E.2d 1136, 1138 (Ind. 2002).

[19] On the other hand, the AWDS specifically authorizes a wrongful death action for the death of an adult who is unmarried and without dependents and allows for the recovery of specified damages, including reasonable medical, hospital, funeral and burial expenses and no more than $300,000 for loss of love and companionship. Ind. Code § 34-23-1-2(a), (c)(3), (e); *see also McCabe v. Comm'r, Ind. Dep't of Ins.,* 949 N.E.2d 816, 818 (Ind. 2011).

[20] Because wrongful death actions are purely creatures of statute and in derogation of common law, they are strictly construed and only those damages prescribed by statute may be recovered. *Necessary v. Inter-State Towing*, 697 N.E.2d 73, 75 (Ind. Ct. App. 1998), *trans. denied*. The purpose of the Wrongful Death Act is to compensate surviving dependents or next of kin for pecuniary losses but not for loss of life. *Chamberlain v. Parks*, 692 N.E.2d 1380, 1383 (Ind. Ct. App. 1998), *trans. denied*. "Pecuniary loss is the foundation of the wrongful death action. This loss can be determined in part from the assistance that the decedent would have provided through money, services or other material

benefits." *Luider v. Skaggs*, 693 N.E.2d 593, 596-97 (Ind. Ct. App. 1998) (citation omitted), *trans. denied.*

[21] Although the term "dependent children" is not defined in these statutes, our supreme court has set a standard for dependency in the context of wrongful death actions: "[P]roof of dependency must show a need or necessity for support on the part of the person alleged to be a dependent . . . coupled with the contribution to such support by the deceased." *New York Cent. R.R. Co. v. Johnson*, 234 Ind. 457, 465, 127 N.E.2d 603, 607 (1955); *see also Deaconess Hosp., Inc. v. Gruber,* 791 N.E.2d 841, 845 (Ind. Ct. App. 2003) (describing this standard as a two-pronged test requiring proof of (1) a need or necessity of support on the part of the alleged dependent and (2) the deceased's contribution to such support).

> Dependency is based on a condition and not a promise, and such dependency must be actual, amounting to a necessitous want on the part of the beneficiary and a recognition of that necessity on the part of decedent, an actual dependence coupled with a reasonable expectation of support or with some reasonable claim to support from decedent. The mere fact that deceased occasionally contributed to the support of the beneficiary in an irregular way, is not sufficient to support the action[.]

*Wolf v. Boren*, 685 N.E.2d 86, 88 (Ind. Ct. App. 1997) (quoting *Kirkpatrick v. Bowyer,* 131 Ind. App. 86, 94, 169 N.E.2d 409, 412 (1960)), *trans. denied.* Total dependency is not required. *Deaconess,* 791 N.E.2d at 846. And "[e]vidence such as a legal obligation to support and claiming dependency for tax purposes

may be considered, although they are not dispositive." *Estate of Sears*, 771 N.E.2d at 1139.

[22] Defendants sought partial summary judgment that Vaughn was not Virginia's dependent and therefore, Plaintiff can only recover damages under the AWDS. We must evaluate whether the designated evidence creates a genuine issue of material fact regarding "a need or necessity of support on the part of" Vaughn and Virginia's contribution to such support. Plaintiff argues that a reasonable jury could find dependence based on the facts. We disagree.

[23] We begin with the first prong. Defendants designated evidence that Vaughn did not have an actual need or necessity for Virginia's support and Plaintiff failed to offer contrary evidence. The undisputed facts reveal that since 2005, Vaughn has been financially stable and has paid his bills and expenses without assistance. He testified that from 2013 to 2017 he had the means to maintain an independent household but instead chose to continue living with his mother to care for her and out of convenience. Appellants' App., Vol. III at 113. He did not need his mother's financial support to provide lodging. In 2017, his gross income was around $45,000. Virginia allowed her son to live with her with no expectation or request that he pay rent, utilities, or groceries. In fact, Vaughn testified that he did the grocery shopping and paid with either his checking account or the joint account. He maintained an accounting of the groceries or other items and would reimburse himself from the joint account or transfer money to his mother. After 2001, Virginia did not claim Vaughn as a dependent on her tax returns.

Virginia purchased Vaughn a car in 2008 and, after that car expired, another in 2015. Vaughn testified the cars were gifts from his mother, although he needed a car primarily to drive to and from work and to take his mother to medical appointments, church, to visit family, and to run errands. And on occasion, Virginia would loan Vaughn money or pay for car repairs. But Vaughn paid the taxes, title and registration fees, auto insurance, and yearly registration on the cars.

With respect to the second prong, the designated evidence establishes that Virginia's alleged support amounted to "gifts, donations, and acts of generosity" that are common in a close parent-child relationship. *Chamberlain*, 692 N.E.2d at 1384. The support or contribution must be "more than just a service or benefit to which the claimed dependent had become accustomed." *Estate of Sears*, 771 N.E.2d at 1139. "Services must go beyond merely helping other family members, even those who have relied on that assistance." *Id.*

The undisputed evidence demonstrates that Vaughn's rent-free living arrangement arose out of convenience and his desire to care for his ailing mother, not out of necessity. The arrangement allowed him to live with and care for his mother and avoid moving to a cheaper apartment within his budget but located in an unacceptable or unsafe area. Rather than Vaughn being a dependent of Virginia, it seems that Virginia was dependent on Vaughn but not in the required legal sense. Although the two may have relied on each other, the arrangement is not the dependency contemplated in the GWDS. The designated evidence fails to establish a genuine issue of material fact relating to

Vaughn's dependency upon Virginia. Therefore, the trial court erred in denying Defendants' motion for partial summary judgment on this issue. *See Deaconess Hosp., Inc.,* 791 N.E.2d at 846-49 (finding no genuine issue of material fact existed as to daughter's dependency where decedent and her adult daughter shared a business, decedent gave daughter 80-90% of business profits, daughter was "able-bodied and self-sufficient[,]" and daughter and her husband had an adjusted gross income of $200,000); *cf. Lomax v. Michael*, 45 N.E.3d 467, 471 (Ind. Ct. App. 2015) (finding partial summary judgment inappropriate because trier of fact could reasonably conclude nephew was or was not partially dependent on decedent where decedent lived with his nephew and his nephew's wife and voluntarily paid significant amount of rent while nephew and his wife were struggling financially).[3]

## C. Survivorship Claim

[27] Plaintiff also sought damages pursuant to Indiana's Survival Act for damages Virginia would have been entitled to recover had she survived. A survival negligence action is available if the person "receives personal injuries caused by

---

[3] Plaintiff also argues Defendants' motion for partial judgment on the pleadings, which the trial court deferred ruling on until trial, was subsequently "rebranded" as a motion for partial summary judgment in "an attempt at an end-run around the previously filed" motion for judgment on the pleadings and constitutes a repetitive motion. Brief of Appellee at 25. Unlike a Trial Rule 12(C) motion for judgment on the pleadings that is decided based solely on the pleadings, Trial Rule 56(C) requires that, at the time of filing a motion for summary judgment, the moving party must designate to the court "all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion." Here, in addition to the pleadings, the trial court considered additional designated evidence, including Vaughn's deposition, Virginia's power of attorney, and her qualified trust. Therefore, Defendants' motion for partial summary judgment was not a repetitive motion.

the wrongful act or omission of another; and . . . subsequently dies from causes *other than those personal injuries.*" Ind. Code § 34-9-3-4(a) (emphasis added). Indiana law precludes recovery on both a wrongful death claim and a survival claim. *See Cahoon v. Cumming*, 734 N.E.2d 535, 544 (Ind. 2000). As stated above, it has been established as fact that Virginia's death was caused by Defendants' negligence. Plaintiff cannot show Virginia died from causes other than Defendants' negligence and has no cause of action under this statute. Therefore, the trial court erred in denying Defendants' motion for partial summary judgment on this issue.

# Conclusion

For the foregoing reasons, we reverse the trial court's denial of the Defendants' motion for partial summary judgment and remand for proceedings consistent with this opinion.

Reversed and remanded.

May, J., and Vaidik, J., concur.