ATTORNEY FOR APPELLANT

J. David Agnew
Lorch Naville Ward LLC
New Albany, Indiana

ATTORNEYS FOR APPELLEE

Dale W. Eikenberry
Elizabeth S. Schmitt
Wooden McLaughlin LLP
Indianapolis, Indiana

William H. Kelley
Thaddeus C. Kelley
Kelley Law Offices LLC
Bloomington, Indiana



FILED

Sep 03 2020, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

Darlene Perkins,
*Appellant-Plaintiff,*

v.

Kathy Fillio,
*Appellee-Defendant*

September 3, 2020

Court of Appeals Case No.
20A-PL-99

Appeal from the Washington
Circuit Court

The Honorable Larry W. Medlock,
Judge

Trial Court Cause No.
88C01-1703-PL-183

**May, Judge.**

[1]     Plaintiff, Darlene Perkins, appeals following a jury verdict in favor of Defendant, Kathy Fillio.  Perkins raises three issues on appeal, which we restate as: (1) whether the trial court committed reversible error when it gave a jury

instruction modeled after Model Civil Jury Instruction 1929; (2) whether the trial court erred by instructing the jury about the duty to maintain a proper lookout; and (3) whether a mistrial was necessary because Fillio flagrantly violated a motion in limine. We affirm.

## Facts and Procedural History[1]

Fillio owns a farm in Salem, Indiana. She keeps pets and livestock on the farm, including goats and sheep. Fillio also owns property in Florida and splits her time between the two states. Dennis Slate, Fillio's half-brother, sometimes would care for Fillio's Indiana home and animals while Fillio was in Florida.

In 2014, a steer broke its leg while Fillio was in Florida. Slate was not able to contact Fillio about the injured steer, so he asked his ex-wife, Perkins, for help because she was more knowledgeable about caring for farm animals than he was. Slate did not tell Fillio in advance that he was going to ask Perkins for help, but Perkins went to Fillio's farm and assisted Slate.[2] The steer did not recover from its injury, so Slate arranged for an Amish man to buy the steer and butcher it.

---

[1] We held oral argument on this matter remotely via Zoom on August 12, 2020. We appreciate counsel's flexibility in participating in an oral argument in this novel manner and commend counsel on their thorough presentation of the issues.

[2] Slate and Fillio gave conflicting accounts regarding whether Slate ever told Fillio that Perkins helped him care for the injured steer.

[4]     Even after the incident with the steer, Slate continued to care for Fillio's Indiana farm and animals while she was in Florida. In August 2016, Fillio left Indiana to spend six weeks in Florida, and she asked Slate to care for her property and animals while she was away. During Fillio's absence, Slate noticed a goat lying down near the edge of its pen, and the goat did not respond when Slate nudged the animal, trying to get it to stand. Slate then called Fillio to let her know about the sick goat. Fillio told Slate to "to leave [the goat] alone." (Tr. Vol. II at 172.) She did not give Slate any further instructions about caring for the animal. During the phone call, Slate did not mention asking Perkins for help with the goat.

[5]     A few days later, Slate tried to call Fillio again about the sick goat, but he could not reach her. Slate drove to Perkins' house in Corydon and told her about the goat, and Perkins agreed to assist him. They first drove to the Tractor Supply store and bought antibiotics and electrolyte fluid to give the goat, and then they went to Fillio's property. Slate and Perkins entered the pen that housed the sick goat. A hornless, white-haired ram[3] and three other goats also lived in the pen. Slate and Perkins loaded the sick goat into a wagon. Slate pulled the wagon out of the pen, and Perkins followed behind trying to make sure the goat's head stayed on the wagon. While Slate and Perkins were exiting the pen, a ram headbutted Perkins' buttocks. Perkins fell to the ground, injuring her right arm and wrist. She went to the hospital later that evening and was diagnosed as

---

[3] Dr. Dwayne Allen, a veterinarian, testified at trial that a ram is an uncastrated male sheep.

having a displaced wrist fracture. Doctors performed two surgeries on her wrist, and Perkins attended physical therapy.

[6] Perkins filed suit against Fillio on March 13, 2017, alleging Fillio "carelessly and negligently maintained the premises as to create an unreasonably dangerous environment for the Plaintiff." (Appellant's App. Vol. II at 20.) Perkins later amended her complaint. After the completion of discovery, Fillio filed a motion for summary judgment. The trial court granted Fillio's motion after determining "Fillio had no way of knowing that Perkins would be on her property or that the ram had any dangerous propensities." *Perkins v. Fillio*, 119 N.E.3d 1106, 1109 (Ind. Ct. App. 2019). Perkins appealed. This court reversed the grant of summary judgment and remanded for further proceedings. *Id*. at 1115. We held that genuine issues of material fact existed regarding whether rams are dangerous as a class of animal, and if so, whether Fillio took reasonable precautions under the circumstances to prevent the ram from causing injury to invitees. *Id*. at 1114.

[7] The trial court held a jury trial on January 7-8, 2020. Prior to trial, the court granted a motion in limine prohibiting "[a]ny reference to medical/social security disability and/or alleged disability fraud." (Appellant's App. Vol. III at 16.) During Fillio's cross-examination of Slate, the following exchange occurred:

> [Defense Counsel:] Mr. Slate, you were talking about all the things the Plaintiff could do before the accident, you are aware are you not that she had rheumatoid arthritis, osteoarthritis,

chronic shingles, and has been on disability since 2004, you are aware of that right?

[Slate:] No, I'm aware of that, yeah.

[Defense Counsel:] Okay.

[Slate:] But all that time she was still making Christmas trees and wreaths until this happened and now she can't do it. She can't work on her truck.

[Plaintiff Counsel:] Sorry, I just wanted to interject our objection just for the record.

[Court:] Objection noted.

[Defense Counsel:] And also Mr. Slate you are aware that she was having complaints of you know the fingers and her thumbs that were required to make wreaths uh since before 2004, aren't you?

[Plaintiff Counsel:] I'm going to object before you answer.

(Tr. Vol. II at 149-50.) The court then held a hearing outside the presence of the jury. When the jury returned, the court admonished them "that the statement in regards to Kathy Perkins in regards to disability, you should disregard that statement." (*Id*. at 154) (errors in original). Perkins did not move for a mistrial during the hearing outside the presence of the jury or following the trial court's admonishment.

[8]     Prior to deliberations, the trial court read Final Instruction #6:

Every person must use the care an ordinary—ordinarily careful person would use under the same or similar circumstances. People who do not use reasonable care are negligent. Every person must maintain a proper lookout to see what should be seen through the exercise of reasonable care. A person is negligent if she does not maintain a proper lookout.

(*Id*. Vol. III at 140.) The trial court also read Final Instruction #30, which stated:

An invitee is a person who[m] a property owner invites to enter or remain on her property.

An owner of property is liable for injury caused to an invitee by the property's condition only if the owner or occupant:

(1) knew that the condition existed and realized that it created an unreasonable danger to an invitee, or should have discovered the condition and its danger;

(2) should have expected that the invitee would not discover or realize the danger of the condition, or would fail to protect herself against it; and

(3) failed to use reasonable care to protect the invitee against the danger.

To recover damages from the defendant, the plaintiff must have proven each of the following by the greater weight of the evidence:

(1) the defendant was the owner of the property;

(2) plaintiff was an invitee on the property owned by the defendant;

(3) plaintiff was injured as a result of a condition on the property; and

(4) the defendant:

> (a) knew that the condition existed and realized that it created an unreasonable danger to invitee, or should have discovered the condition and its danger;

> (b) should have expected that the invitee would not discover or realize the danger of the condition, or would fail to protect herself against it; and

> (c) failed to use reasonable care to protect the invitee against the danger.

(Appellant's App. Vol. II at 18-19.) The jury returned a verdict in favor of Fillio.

# Discussion and Decision

## I. Final Instruction #30

Jury instructions are generally committed to the sound discretion of the trial court. *Torrence v. Gamble*, 124 N.E.3d 1249, 1251 (Ind. Ct. App. 2019). "In evaluating the propriety of a given instruction, we consider 1) whether the instruction correctly states the law, 2) whether there is evidence in the record

supporting the instruction, and 3) whether the substance of the instruction is covered by other instructions." *Hill v. Rhinehart*, 45 N.E.3d 427, 439 (Ind. Ct. App. 2015), *trans. denied*. We review the question of whether an instruction correctly states the law *de novo*. *Fechtman v. U.S. Steel Corp.*, 994 N.E.2d 1243, 1247 (Ind. Ct. App. 2013), *trans. denied*. "Instructions are to be read together as a whole and we will not reverse for an instructional error unless the instructions, as a whole, mislead the jury." *Buckner v. State*, 857 N.E.2d 1011, 1015 (Ind. Ct. App. 2006).

[10] The Court adopted Fillio's Proposed Final Instruction #6, which was based on Indiana Model Civil Jury Instruction ("MCJI") 1929 ("Duty to Invitee—Conditions on the land") and gave the instruction as Final Instruction #30. MCJI 1929 reads:

> [(Name) was an invitee on the property of the (owner)(occupant), (name).]
>
> An [owner][occupant] of property is liable for injury caused to an invitee by the property's condition only if the [owner][occupant]:
>
> (1) knew that the condition existed and realized that it created an unreasonable danger to an invitee, or should have discovered the condition and its danger;
>
> (2) should have expected that the invitee would not discover or realize the danger of the condition, or would fail to protect himself or herself against it; and

(3) failed to use reasonable care to protect the invitee against the danger.

[11] Perkins argues Final Instruction #30 misstated Indiana law and contends the trial court instead should have given an instruction modeled after MCJI 1932(A).[4] Perkins first asserts this court's prior opinion, which reversed the trial court's grant of summary judgment, established that Perkins was an invitee pursuant to the law of the case doctrine.[5] She then argues that, even if the law

---

[4] MCJI 1932(A) ("Duty to Invitee—Elements and Burden of Proof—Activity on the Land") states:

> An [owner][occupier] of property is liable for injury caused to an invitee due to activities that happen on the land if [*plaintiff*][proves][has proven] each of the following by the greater weight of the evidence:
>
> (1) [*defendant*] was the [owner][occupier] of property;
>
> (2) [*plaintiff*] was an invitee on the property [owned][occupied] by [*defendant*];
>
> (3) [*plaintiff*] was injured as a result of [*describe the act or failure to act from which the injury arose*]; and
>
> (4) [*defendant*] failed to use reasonable care to protect the invitee against [*describe the act or failure to act from which the injury arose*].

(emphases in original).

[5] Perkins directs our attention to footnote 2 of this court's opinion following summary judgment:

> Fillio concedes that Perkins was invited upon the property by Slate but does not concede that she was an invitee of Fillio. In our view, this distinction does not help Fillio, as it was foreseeable that Slate might have to invite others onto the Property to help care for the animals. In fact, Fillio was aware Slate had done this in 2013, when Slate invited Perkins onto the Property to assist him with a sick steer. Although

of the case doctrine did not apply in this instance, Final Instruction #30 was erroneous because Perkins' status on the land was a question of law to be decided by the trial court, not the jury. We deal with these two arguments separately.

[12] "[T]he law of the case doctrine provides that an appellate court's determination of a legal issue binds both the trial court and the appellate court in any subsequent appeal involving the same case and substantially the same facts." *Dutchmen Mfg., Inc. v. Reynolds*, 891 N.E.2d 1074, 1082 (Ind. Ct. App. 2008), *trans. denied*. This doctrine prevents the needless re-litigation of issues previously decided. *Id.* "[Q]uestions not conclusively decided in the earlier appeal do not become law of the case." *Id.* at 1083. Nor do statements made in dicta establish law of the case. *See State Farm Fire & Cas. Co. v. Radcliff*, 18 N.E.3d 1006, 1012 (Ind. Ct. App. 2014) (stating part of previous appellate decision in case was dicta and therefore not binding or established as law of the case), *reh'g denied*, *trans. denied*.

[13] The issue decided on appeal following summary judgment was whether rams were dangerous as a class of animal, and this court held that there was a genuine dispute of fact regarding whether they were. *Perkins*, 119 N.E.3d at

---

Fillio denied that she knew Perkins was the person Slate invited onto the Property, she was aware that he had invited someone in the past.

*Perkins*, 119 N.E.3d at 1111 n.2.

1114. Perkins' status on the land was not necessary to that determination, and therefore, we hold her status on the land was not established as law of the case. *See Dean V. Kruse Foundation, Inc. v. Gates*, 973 N.E.2d 583, 591 (Ind. Ct. App. 2012) (holding law of the case doctrine did not apply because the relevant issue was not decided directly or by implication in previous appeal), *trans. denied*. We also note the law of the case doctrine does not apply because relevant, new facts came to light on remand through Fillio's testimony. *Cf. Terex-Telelect, Inc. v. Wade*, 59 N.E.3d 298, 304 (Ind. Ct. App. 2016) (holding law of the case doctrine applied when the evidence considered on the first appeal was "the same evidence before us now"), *trans. denied*.

[14] Next, we turn to Perkins' argument that the trial court should have determined her status on the land. A person's status on land is generally a question of law for the trial court to decide. *Pickering v. Caesars Riverboat Casino, LLC*, 988 N.E.2d 385, 389 (Ind. Ct. App. 2013). However, a person's status on land "may turn on factual issues that must be resolved by the trier of fact." *Kopczynski v. Barger*, 887 N.E.2d 928, 931 (Ind. 2008). Fillio points to her testimony at trial:

> [Fillio's counsel]: Alright, good. Now you knew, would you agree with me that if anybody's going to [sic] out there and take a look at that goat, they're going to have to go into the pen with the goat?
>
> [Fillio:] **Dennis was not supposed to go in the pen. Nobody's ever supposed to go in those pens** and it's not because there [sic] dangerous, it's because I don't want them to go in those pens.

Even -he was putting food over the gate but I told him I says if they're pills if they move them into the center, don't go in and get them. **Do not go in that pen to get them just put it over the gate.**

[Fillio's counsel:] Okay, what did you tell him to do if there was a goat dying?

[Fillio:] I didn't tell him anything to do.

＊ ＊ ＊ ＊ ＊

[Fillio's Counsel:] What was your expectation that Dennis would do, if an animal became sick or injured?

[Fillio:] He would just leave it alone until I got back home.

＊ ＊ ＊ ＊ ＊

[Fillio's Counsel:] Okay, so um, you limit -you limited the scope of what he was supposed to be doing in your mind to just feeding and watering the animals, is that right?

[Fillio:] That's it. That was it the only responsibility he had to do.

[Fillio's Counsel:] Okay, so you did not leave him responsible for caring for the animals other than just feeding them?

[Fillio:] Just feeding and water.

[Fillio's Counsel:] So, did you leave anybody else with any responsibility beyond feeding them to care for the animals?

[Fillio:] No.

(Tr. Vol. II at 175, 180-81) (emphasis added). In her closing argument, Fillio stressed the above testimony, arguing Slate did not have permission to enter the animal pen or invite others into the pen. Therefore, as Fillio notes in her brief, there were two questions of fact the jury was required to resolve: (1) "was Perkins an invitee when she entered the property, and did she maintain that status as an invitee when she entered the pen?;" and (2) "whether Perkins had an implied invitation from Fillio to be on the property, and if she did, whether she exceeded that invitation by going into the pen with the ram." (Appellee's Br. at 22.) The trial court did not err in leaving the question of Perkins' status to the jury because the status turned on factual questions. *See Handy v. P.C. Building Materials, Inc.*, 22 N.E.3d 603, 608-10 (Ind. Ct. App. 2014) (holding genuine issue of material fact remained for trier of fact to decide regarding whether hardware store patron was an invitee or licensee at time of injury), *trans. denied*.

[15] Final Instruction #30 modified the bracketed first line of MCJI 1929 to state: "An invitee is a person who[m] a property owner invites to enter or remain on her property." (Tr. Vol. III at 140.) Perkins contends this modification gave jurors the misimpression that only the property owner could invite a person onto the premises for that person to be considered an invitee. However, Perkins failed at trial to take issue with the omission of the word "occupant" from Final

Instruction #30, and she did not tender an instruction indicating the numerous ways an invitation onto a premises may be extended. Thus, Perkins' argument is waived. *See Anderson v. Taylor*, 289 N.E.2d 781, 785 (Ind. Ct. App. 1972) ("The law is well settled that if the court fails to cover some pertinent point then it is the obligation and duty of the party desiring to have that particular point covered in the instructions to tender his instruction on the same.").

[16] Finally, Perkins argues that by modeling Final Instruction #30 after MCJI 1929 rather than MCJI 1932(A), the court instructed the jury that she was required to prove elements she did not have to prove – such as that maintaining a domestic animal was a condition of the land rather than an activity conducted on the land. However, in the context of this case, we do not see a meaningful difference. Landowners owe invitees a duty of reasonable care to protect them from injuries that result from conditions of the land and injuries that result from activities conducted on the land. *Rogers v. Martin*, 63 N.E.3d 316, 323 (Ind. 2016); *see also Harris v. Traini*, 759 N.E.2d 215, 223 (Ind. Ct. App. 2001) ("The duty of reasonable care [a landowner owes an invitee] extends not only to harm caused by a condition on the land but also to activities being conducted on the land."), *reh'g denied*, *trans. denied*. MCJI 1929 adds two elements not present in MCJI 1932: (1) that the defendant knew the condition existed and created a danger to invitees; and (2) that the defendant should have recognized invitees would not protect themselves from the danger. However, to hold a defendant liable for harm caused by the defendant's animal, a plaintiff must prove

one (or both) of the following: (1) a defendant's knowledge that a particular animal has a propensity for violence or (2) a defendant's ownership of a member of a class of animals that are known to have dangerous propensities, as the owner of such an animal is bound to have knowledge of that potential danger.

*Perkins*, 119 N.E.3d at 1112. If the animal possesses dangerous propensities, the owner must take reasonable precautions to prevent the animal from causing harm. *Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind. 1993). Therefore, Perkins was required to prove Fillio knew, or should have known, that her ram had a dangerous propensity and that someone on the property would not recognize that danger. In fact, Final Instruction #13 stated:

> [T]he owner of a domestic animal is not liable for injuries caused by the animal unless the animal had dangerous propensities known, or which should have been known, to the owner. A dangerous propensity is propensity or tendency of an animal to do any act which might endanger the safety of person or property in given situation. If an individual animal lacks dangerous propensities, the rule is simply that the owner of a domestic animal is bound to know the natural propensities of the particular class of animals to which it belongs. In either event, the owner must exercise reasonable care to guard against the propensities and to prevent injures reasonably anticipated from them.

(Appellee's App. Vol. II at 8.) Thus, Final Instruction #30 did not require Perkins to prove additional, unnecessary elements; rather, the instruction simply restated elements Perkins was already required to prove. *See Clay City Consol. Sch. Corp. v. Timberman*, 918 N.E.2d 292, 301 (holding trial court's instructions accurately instructed the jury regarding proximate cause).

For all these reasons, Perkins has not demonstrated the trial court abused its discretion when it gave Final Instruction #30.

## II. Final Instruction #6

Perkins next contends Final Instruction #6 erroneously imposed duties on her that are not applicable in the premises liability context. Final Instruction #6 was fashioned after two model jury instructions, MCJI 1301 and MCJI 1303. MCJI 1301 states: "Every [motor vehicle driver][and][pedestrian] must use the care an ordinarily careful person would use under the same or similar circumstances. [Drivers] [and] [Pedestrians] who do not use reasonable care are negligent." MCJI 1303 states: "Every [driver][pedestrian] must maintain a proper lookout to see or hear what should be seen or heard through the exercise of reasonable care. A person is negligent if [he][she] does not maintain a proper lookout."

Perkins concedes that maintaining a proper lookout when crossing the street is necessary and reasonable because oncoming traffic is a known hazard. *See Anderson v. Pre-Fab Transit Co.*, 409 N.E.2d 1157, 1164 (Ind. Ct. App. 1980) ("[A] pedestrian stepping onto a street from a curb or place of safety has a duty to make sure he is not stepping into the path of an oncoming car which would be unable to stop."), *reh'g denied*. However, Perkins believes she was not similarly situated to a pedestrian crossing the street. We disagree.

This court has recognized a duty for individuals to maintain a proper lookout in cases that do not involve motor vehicle accidents. *See Booher v. Alhom, Inc.*, 295

N.E.2d 841, 847-48 (Ind. Ct. App. 1973) (holding that plaintiff, injured while helping to unload a truck, "was required by law to keep a reasonable lookout for possible danger to himself and to act as a reasonably prudent man"); *see also,* *Howard v. H.J. Ricks Const. Co.*, 509 N.E.2d 201, 206 (Ind. Ct. App. 1987) (stating in discussion regarding contributory negligence that a "person is required to make reasonable use of his faculties and senses to discover dangers and conditions to which he is or might be exposed"), *reh'g denied*, *trans. denied*. Dr. Dwayne Allen, a veterinarian, testified that rams are herd animals and they will protect the herd from perceived threats. He explained that "you've got to be on guard all the time" if there is a ram in an animal pen. (Tr. Vol. III at 54.) Just as a pedestrian should anticipate that cars may be traveling down a road, a person entering an animal pen should anticipate that the animals in the pen may behave aggressively toward an unfamiliar presence.[6] Final Instruction #6 was warranted by the evidence and was an accurate statement of law, and Perkins has not demonstrated the trial court erred by giving the instruction. *See Kelly v. Levandoski*, 825 N.E.2d 850, 867 (Ind. Ct. App. 2005) (holding evidence warranted instruction regarding implied-in-law contract), *trans. denied*.

---

[6] For example, it is tragic, but not surprising, that a killer whale at SeaWorld will engage in "horseplay" with and ultimately kill a person who sneaks into the whale's tank after the park has closed. "Man found dead in whale tank at Florida's SeaWorld." http://www.cnn.com/US/9907/06/killer.whale/ [https://perma.cc/V7FC-SJNG]

# III. Motion in Limine

Perkins argues the trial court should have declared a mistrial after Fillio referenced Perkins' receipt of disability benefits in violation of a motion in limine. Our standard of review regarding a motion for mistrial is well-settled:

> The decision on a motion for mistrial lies within the discretion of the trial court. A mistrial is an extreme remedy and required only when no other method can rectify the situation. A prompt admonishment advising the jury to disregard the improper testimony is usually enough to avoid a mistrial. Failure to grant a mistrial may not be asserted on appeal where an admonishment is accepted without further objection or claim that it is insufficient.

*TRW Vehicle Safety Systems, Inc. v. Moore*, 936 N.E.2d 201, 213 (Ind. 2010) (internal citations and quotation marks omitted).

After the court admonished the jury not to consider Fillio's reference to Perkins' receipt of disability benefits, Perkins did not move for a mistrial or indicate that the court's admonishment was insufficient. Therefore, the claim is unavailable to Perkins on appeal. *See id*. at 214 (holding claim of mistrial error was not available on appeal because party made no objection or argument at trial that the court's admonition was insufficient).

# Conclusion

The trial court did not err in giving Final Instruction #30, which was a modified version of MCJI 1929. Further, the trial court did not err in

instructing the jury on Perkins' duty to maintain a proper lookout.  Finally, Perkins cannot contend on appeal that she was entitled to a mistrial because she failed to move for a mistrial at trial.  Therefore, we affirm.

[22]    Affirmed.

Robb, J., and Vaidik, J., concur.